# EXHIBIT A

## IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | Supreme Court Case No. 97-1312 |
| Appellee, | ) | |
| | ) | Trial Court Case No. 96-CR-005394 |
| -vs- | ) | |
| | ) | |
| JESSE COWANS, | ) | **DEATH PENALTY CASE** |
| | ) | |
| Appellant. | ) | |

---

### APPLICATION FOR REOPENING

---

Now comes Appellant, Jesse Cowans, and respectfully requests that this Court grant his Application for Reopening under Ohio R. App. P. 26(B) and State v. Murnahan, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (1992), because of the denial of effective assistance of counsel during Appellant's direct appeal. A Memorandum in Support is attached hereto and incorporated herein by reference.

Respectfully submitted,

DONALD WHITE
Clermont County Prosecutor
123 North Third Street
Batavia, Ohio 45103-3033

DAVID H. BODIKER (0016590)
Ohio Public Defender

SUSAN M. ROCHE (0070729)
Assistant State Public Defender
**Counsel of Record**

Office of the Ohio Public Defender
8 E. Long Street, 11th Floor
Columbus, Ohio 43215-2998
(614) 466-5394   Fax: (614) 644-0703

COUNSEL FOR APPELLEE

COUNSEL FOR APPELLANT

## MEMORANDUM IN SUPPORT

In <u>State v. Murnahan</u>, 63 Ohio St. 3d 60, 584 N.E. 2d 1204 (1992), this Court established a new procedure for raising claims of ineffective assistance of appellate counsel in Ohio state courts. Subsequent to <u>Murnahan</u>, this Court amended Ohio R. App. P. 26(B), reworking the procedure by which such claims should be raised in an Ohio court of appeals and this Court. The effective date of the new appellate rule was July 1, 1994. Under Ohio R. App. P. 26(B)(5), an application should be granted if a "genuine issue" exists regarding whether the applicant was denied effective assistance of appellate counsel.

### A.    PROCEDURAL HISTORY

Appellant Jesse Cowans was convicted in the Clermont County Court of Common Pleas of aggravated murder and was sentenced to death. Appellant was represented at trial by attorneys Michael P. Kelly and Bruce S. Wallace. Attorneys Carol Wright and Kristin Burkett represented Appellant on his direct appeal to this Court. Appellant filed a timely notice of appeal, and on October 29, 1999, this Court denied his appeal of right. <u>State v. Cowans</u>, 87Ohio St. 3d 68, 717 N.E.2d 298 (1999).

### B. REOPENING IS REQUIRED

After a review of the direct appeal brief that was filed on behalf of Appellant Jesse Cowans, it is apparent that his appellate counsel were prejudicially ineffective for failing to raise meritorious issues that arose during his capital trial (see Exhibit A). Appellate counsel's failure to raise these issues presents a genuine issue as to whether Appellant Cowans was denied effective assistance of appellate counsel on his direct appeal.

2

Jesse Cowans's appellate counsel failed to raise before this Court that his sentence was imposed in an arbitrary and capricious manner when he was not informed about the rights he was waiving by refusing to present mitigation evidence. Also, there were three additional instances of ineffective assistance of trial counsel. Although counsel raised claims of ineffective assistance of counsel in Appellant's merit brief at Proposition of Law No. 1 and 7, counsel's argument was limited and overlooked three additional instances where trial counsel were deficient. In Proposition of Law No. 8, appellate counsel raised the claim that Appellant Cowans did not have the capacity to knowingly and intelligently waive mitigation. However, appellate counsel failed to raise the claim that Appellant's unconstitutional waiver was also a violation of the Equal Protection Clause because it was done in an arbitrary and capricious manner.

Appellate counsel's failure to adequately prepare and present this evidence violated Appellant's right to effective assistance of counsel. Appellant was substantially prejudiced by appellate counsel's ineffective representation and failure to raise meritorious claims. There is unquestionably a "reasonable probability" that, but for the ineffectiveness of appellate counsel, Appellant's aggravated murder conviction would have been reversed and his sentence of death vacated. Strickland v. Washington, 466 U.S. 668 (1984). Therefore, this Court should reopen his direct appeal.

Appellant identifies below, the meritorious issues not raised by appellate counsel that impacted the guilt determination and sentencing phases of his capital trial. Due to the page limitation imposed by Ohio App.R. 26(B), Appellant is unable to fully brief the issues not raised by prior appellate counsel and requests this Court to grant the application for reopening so that complete and proper briefing on the issues can be presented to this Court.

## C.    GOOD CAUSE FOR FILING THIS APPLICATION
## AFTER THE 90-DAY LIMIT

Current counsel was assigned to represent Appellant Jesse Cowans in December 2003, pursuant to his pending writ of habeas corpus action in federal district court. (Cowans v. Bagley, Case No. C-1-00-618.)  Undersigned counsel had not previously worked on Appellant's case. After reviewing relevant portions of the record, counsel determined that the arguments made on Appellant's behalf during his direct appeal before this Court were incomplete.  Former state-court appellate counsel continues to represent Appellant in his federal habeas action.  When they represented him in his direct appeal they omitted meritorious issues from the appellate brief. Because Appellant Cowans now has new counsel in this Court, this is the first opportunity he has had to bring this Application for Reopening.

## D. PROPOSITIONS OF LAW

The Due Process Clause of the Fourteenth Amendment guarantees effective assistance of counsel on a criminal appeal as of right.  Evitts v. Lucey, 469 U.S. 387 (1985).  Appellate counsel must act as an advocate and support the cause of the client to the best of their ability. See, e.g., Anders v. California, 386 U.S. 738 (1967); Penson v. Ohio, 488 U.S. 75 (1989). Failure to present a meritorious issue for review constitutes ineffective assistance of appellate counsel.  See, e.g., Matire v. Wainwright, 811 F.2d 1430 (11th Cir. 1987); Peoples v. Bowen, 791 F.2d 861 (11th Cir. 1986).  Had Appellant's direct appeal counsel presented the following meritorious issues to this Court, the outcome of his appeal would have been different:

**Proposition of Law No. I:**

**Trial counsel were constitutionally ineffective when they failed to ensure that Appellant's waiver of his right to present mitigation evidence was knowing, intelligent, and voluntary.**

4

During the penalty phase of Appellant's capital trial, his attorneys presented no mitigation evidence on his behalf. Furthermore, they did nothing to ensure that Appellant understood that by waiving his right to present such evidence he was foregoing the only opportunity he would have to persuade the jury that he should not be sentenced to death.

Trial counsel should have acted to determine whether Appellant fully understood what he was foregoing by waiving the presentation of mitigation. Counsel should have requested a hearing to determine whether Appellant understood why a mitigation hearing was to be held, what supportive evidence was available, and that he was facing a certain death sentence if the jury heard nothing about his history, background or character. At the very least, trial counsel should have either questioned their client -- or asked the court to question him -- about his knowledge and understanding of these matters and whether he had been coerced into waiving mitigation. The fact that trial counsel failed to act is evidence of deficient performance that falls below the standards required by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

The right to present evidence in mitigation of sentence is a substantial fundamental right subsumed within the Due Process Clause and required by the Eighth Amendment. It is a right "deeply rooted in this nation's history and tradition." <u>Moore v. East Cleveland</u>, 431 U.S. 494, 503 (1977). It is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 105 (1934). It is a right "implicit in the concept of ordered liberty" such that "neither liberty nor justice would exist if [it] were sacrificed." <u>Palko v. Connecticut</u>, 302 U.S. 319, 325, 326 (1937). The social and constitutional consequences of the waiver of the right to present mitigating evidence at the sentence selection phase of a capital case under Ohio law are at least as significant as the waiver of the right to trial, confrontation and cross-examination occasioned by a guilty plea in a non-capital case.

5

Appellant was particularly prejudiced by his trial counsel's ineffective representation because at various stages of his trial he had demonstrated irrational behavior and an extreme distrust of his attorneys. Trial counsel's failure to ascertain whether their client was knowingly, intelligently, and voluntarily waiving his right to present mitigation must be viewed as substandard performance with any client. But in Appellant Cowans' case it was particularly important. His actions throughout the trial demonstrated that he was obviously suffering from some sort of mental impairment. When his trial counsel ignored Appellant's afflictions and failed to ascertain whether he fully understood the consequences of waiving mitigation, he was prejudiced. Counsel's failure to explain the consequences of not presenting mitigation to the jury undermines the confidence in his capital sentencing. Consequently, Appellant's rights under the Sixth and Fourteenth Amendment of the United States Constitution and corresponding provisions of the Ohio Constitution were violated.

### Proposition of Law No. II.

**Trial counsel were constitutionally ineffective when they failed to establish the blood type found on a swab of blood taken from the crime scene, and to determine whether it belonged to the victim, the defendant, or some unknown assailant.**

The state's witness, Ed Holt, of the Clermont County Sheriff's Office, testified that he collected a swab sample of blood which was found on the floor near the victim. Tr. 1739. However, in his testimony Holt did not identify the blood type of the sample he found at the scene. The victim's body underwent an autopsy, as testified to by Dr. Leopold Buerger. Tr. 1608-1637. The serology results of the autopsy revealed that the victim had a blood type of "O." Appellant's blood could have been drawn and typed, but it was not. With blood samples gathered from both individuals, trial counsel would have

6

established whether the blood was the victim's, Appellant's, or that of some unknown assailant. All of the information was available for presentation, but trial counsel failed to conduct an adequate investigation in this matter.

The Sixth Amendment to the United States Constitution guarantees to the criminal defendant the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). This right is violated when counsel's performance falls below an objective standard of reasonableness and the client is prejudiced by counsel's breach of duty. Id. at 690, 696. Only after a complete investigation can counsel make an informed, tactical decision about which information would be helpful in the client's case. Wiggins v. Smith, __U.S. ___, 123 S.Ct. 2527 (2003); Williams v. Taylor, 529 U.S. 362 (2000); State v. Johnson, 24 Ohio St. 3d 87, 90 (1986)

Appellant suffered prejudice as a result of trial counsel's ineffectiveness. The failure of his attorneys to investigate and determine his blood type and that of the blood sample on the swab was unreasonable. Had they conducted such an investigation they would have been able to make an informed decision about how to use that information. Appellant was prejudiced by trial counsel's failure to act because the testimony about the blood sample appeared to be adversely significant. His attorneys had nothing to challenge such an inevitable assumption by the jury.

**Proposition of Law No. III.**

**Trial counsel was constitutionally ineffective when they failed to challenge the state's evidence that a palm print, found in the victim's kitchen, allegedly matched Appellant's palm print.**

The state's witness, Ed Holt, of the Clermont County Sheriff's office testified regarding the manner in which he preserved the fingerprints/palmprint found on a piece

7

of plastic. These prints were entered into evidence at Appellant's capital trial. Tr. 1745-60. The state alleged that the fingerprint/palmprint evidence were those of Appellant Cowans. Tr. 1748-60. Holt admitted that he did not completely understand the scientific procedure of the "super-glue" method of fingerprint preservation. Appellant's trial counsel questioned Holt's qualification to testify about the procedure since he did not understand it. But they did not present expert testimony to explain the highly technical procedure or to describe why it was unreliable. Tr. 1750, 1751, 1755. Without this kind of expert testimony, the jury was left only with testimony that the fingerprint/palmprint procedure performed by the Clermont County Sheriff's Department was sufficient to connect Appellant to the crime scene.

The Sixth Amendment to the United States Constitution guarantees to the criminal defendant the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668 (1984). This right is violated when counsel's performance falls below an objective standard of reasonableness and the client is prejudiced by counsel's breach of duty. Id. at 690, 696. Only after a complete investigation can counsel make an informed, tactical decision about which information would be helpful in the client's case. Wiggins v. Smith, __U.S. ___, 123 S.Ct. 2527 (2003); Williams v. Taylor, 529 U.S. 362 (2000); State v. Johnson, 24 Ohio St. 3d 87, 90 (1986)

Appellant suffered prejudice as a result of trial counsel's ineffectiveness because the fingerprints/palmprint were the single piece of direct evidence in the case that linked Appellant to the crime. The jury never heard how unreliable this evidence was.

**Proposition of Law No. IV.**

**Appellant's death sentence was imposed in an arbitrary and capricious manner, in violation of the Eighth Amendment, when the jury was prevented from hearing**

8

**relevant mitigation evidence due to Appellant's invalid waiver of mitigation without having his competency examined.**

Appellant Cowans refused to permit the presentation of any evidence of mitigating circumstances at the sentencing hearing. Based on the verdict in the trial phase finding Appellant guilty of several aggravating circumstances, this decision required the jury to recommend death. O.R.C. §2929.03. Neither the trial court nor defense counsel undertook an inquiry sufficient to assure that Appellant actually understood the ramifications of his decision or whether he had the ability to make a knowing and intelligent decision to choose death.

In State v. Ashworth, 85 Ohio St. 3d 56 (1999) this Court held that there must be an on-the-record colloquy between the court and a defendant to determine that a defendant is knowingly, voluntarily, and intelligently waiving the presentation of mitigation evidence.

The Fourteenth Amendment's guarantee of equal protection requires similar treatment of persons similarly situated. This right extends to the protection against cruel and unusual punishment. A death sentence imposed in violation of the equal protection guarantee is a cruel and unusual punishment. Any arbitrary use of the death penalty also offends the Eighth Amendment. Furman v. Georgia, 408 U.S. 238, 249 (1972) (Douglas, J., concuring).

The failure of trial counsel and the trial court, to make any inquiry of Appellant about whether his waiver was knowing, intelligent, and voluntary, was arbitrary and capricious. He was not informed about the nature of the right he was waiving or the consequences of waiving that right. There was no finding by the trial court that Appellant even desired to waive his rights. Yet, the actions, comments and demands of Appellant throughout the trial and in pre-trial matters revealed strong evidence that he was not competent to waive presentation of mitigation evidence. There was no evidence in the record to find that Appellant Cowans was competent at the time mitigation was waived, but there was sufficient indicia to indicate his incompetence. As a result,

trial counsel and the trial court acted in an arbitrary and capricious manner when they failed to determine whether Appellant's waiver of mitigating evidence was knowing, intelligent, and voluntary. Consequently, his rights under the Eighth and Fourteenth Amendments of the United States Constitution were violated.

### D.  RELIEF REQUESTED

Appellant Jesse Cowans has shown that there are genuine issues regarding whether he was deprived effective assistance of counsel on appeal with respect to the Propositions of Law noted. Appellant requests that this Application for Reopening be granted and that he be afforded an opportunity to file a new appellate brief with supporting materials, "in order to establish that prejudicial errors were made in the trial court and that ineffective assistance of appellate counsel in the prior appellate proceedings prevented these errors from being presented effectively to the court of appeals." See Ohio R. App. P. 26(B), Staff Note.

Respectfully submitted,

DAVID H. BODIKER (0016590)
Ohio Public Defender

SUSAN M. ROCHE (0070729)
Assistant State Public Defender
**Counsel of Record**

Office of the Ohio Public Defender
8 E. Long Street, 11th Floor
Columbus, Ohio  43215
(614) 466-5394
Fax: (614) 644-0703

COUNSEL FOR APPELLANT

<u>**EXHIBIT A**</u>

## IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | Supreme Court Case No. 97-1312 |
| Appellee, | ) | |
| | ) | Trial Court Case No. 96-CR-005394 |
| -vs- | ) | |
| | ) | |
| JESSE COWANS, | ) | **DEATH PENALTY CASE** |
| | ) | |
| Appellant. | ) | |

---

### AFFIDAVIT OF SUSAN M. ROCHE

---

STATE OF OHIO          )
                                   )
COUNTY OF FRANKLIN    )

I, Susan M. Roche, after being duly sworn, hereby state as follows:

1.    I am an attorney licensed to practice law in the state of Ohio since 2000 and in New York since 1988. From December 1998 to June 2000 I had temporary certification in Ohio. I have been an assistant state public defender in Ohio since 1998. My primary area of practice is capital litigation.

2.    Due to my focused practice of law and my attendance at death-penalty seminars, I am aware of the standards of practice involved in the appeal of a case in which the death sentence was imposed.

3.    The Due Process Clause of the Fourteenth Amendment guarantees effective assistance of counsel on an appeal as of right. <u>Evitts v. Lucey</u>, 469 U.S. 587 (1985).

4.    The initial responsibility of appellate counsel, once the transcript is filed, is to ensure that the entire record has been filed with the Ohio Supreme Court. Appellate counsel has a fundamental duty in every criminal case, especially in a capital case, to ensure that the entire record is before the reviewing courts on appeal. Ohio R. App. P. 9(B); Ohio Rev. Code Ann. § 2929.05 (Anderson 1995); <u>State ex rel. Spirko v. Judges of the Court of Appeals, Third Appellate District</u>, 27 Ohio St. 3d 13, 501 N.E. 2d 625 (1986).

11

5.    After ensuring that the transcript is complete, counsel must then review the record for purposes of issue identification. This review of the record not only includes the transcript, but also the pleadings and exhibits.

6.    For counsel to properly identify issues, they must have a good knowledge of criminal law in general. Most trial issues in capital cases will be decided by criminal law that is applicable to non-capital cases. As a result, appellate counsel must be informed about the recent developments in criminal law when identifying potential issues to raise on appeal. Counsel must remain knowledgeable about recent developments in the law after the merit brief is filed.

7.    Since the reintroduction of capital punishment in response to the Supreme Court's decision in Furman v. Georgia, 408 U.S. 238 (1972), the area of capital litigation has become a recognized specialty in the practice of criminal law. Numerous substantive and procedural areas unique to capital litigation have been carved out by the United States Supreme Court. As a result, anyone who litigates in the area of capital punishment must be familiar with these issues in order to raise and preserve them for appellate and postconviction review.

8.    Appellate representation of a death-sentenced client requires recognizing that the case will most likely proceed to the federal courts at least twice: first on petition for Writ of Certiorari in the United States Supreme Court, and again on petition for Writ of Habeas Corpus filed in a federal district court. Appellate counsel must preserve all issues throughout the state court proceedings on the assumption that relief is likely to be sought in federal court. The issues that must be preserved are not only issues unique to capital litigation, but also case-and fact-related issues, unique to the case, that impinge on federal constitutional rights.

9.    It is a basic principle of appellate practice that to preserve an issue for federal review, the issue must be exhausted in the state courts. To exhaust an issue, the issue must be presented to the state courts in such a manner that a reasonable jurist would have been alerted to the existence of a violation of the United States Constitution. The better practice to exhaust an issue is to cite directly to the relevant provisions of the United States Constitution in each proposition of law and in each assignment of error to avoid any exhaustion problems in the federal courts.

10.    It is important that appellate counsel realize that the reversal rate in the state of Ohio is eleven percent on direct appeal and two percent in postconviction. It is my understanding that forty to sixty percent (depending on which of several studies is relied upon) of all habeas corpus petitions are granted. Therefore, appellate counsel must realize that in Ohio, a capital case is very likely to reach federal court and, therefore, the real audience of the direct appeal is the federal court.

11.    Based on the foregoing standards, I have identified four issues that should have
been evaluated by appellate counsel and presented to the Ohio Supreme Court.
These issues are meritorious and warrant relief.  Had former appellate counsel
presented this error to the Ohio Supreme Court, Appellant would have been given
relief.  Thus, appellate counsel's failure to present these errors raise a genuine
issue as to whether Antonio Franklin was denied effective assistance of appellate
counsel.

12.    The Propositions of Law identified in Appellant's Application were not presented
to the Ohio Supreme Court.

13.    Based on my evaluation of the record and understanding of the law, I believe that
if these errors had been presented for review, the Ohio Supreme Court would have
granted relief.  Also, those errors would have been preserved for federal review.

14.    Therefore, Jesse Cowans was detrimentally affected by the deficient performance
of his former appellate counsel.

_____

SUSAN M. ROCHE
Counsel for Appellant Jesse Cowans

Sworn to and subscribed before me
this ___3ʳᵈ day of January, 2004.

_____
Notary Public

KELLY A. HEIBY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES NOVEMBER 5, 2008

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing APPLICATION FOR REOPENING was forwarded by regular U.S. mail to the office of Donald White, Clermont County Prosecutor, 123 North Third Street, Batavia, Ohio 45103-3033, on the 23rd day of January, 2004.

Susan M. Roche
Counsel for Appellant

14

**EXHIBIT B**

ORIGINAL

IN THE SUPREME COURT OF OHIO

ON COMPUTER - RAN

| | | |
|---|---|---|
| State of Ohio, | : | Case No.  97-1312 |
| Appellee, | : | |
| | : | Trial Court Case No. 96-CR- |
| vs. | : | 05394 |
| | : | |
| Jesse Cowans, | : | On Application for Reopening |
| Appellant. | : | S.Ct.Prac.R. XI(5). |

---

MEMORANDUM IN OPPOSITION ON BEHALF OF APPELLEE THE STATE OF OHIO

---

David H. Bodiker  (0016590)
Ohio Public Defender
Susan M. Roche  (0070729)
Assistant Ohio Public Defender    (COUNSEL OF RECORD)

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215-2998
614.466.5394  voice
614.644.0703  facsimile

FEB 0 9 2004

MARCIA J. MENGEL, CLERK
SUPREME COURT OF OHIO

COUNSEL FOR APPELLANT JESSE COWANS

Donald W. White  (0005630)
Clermont County Prosecutor
By: David Henry Hoffmann  (0005384) (COUNSEL OF RECORD)
Assistant Prosecutor
123 North Third Street
Batavia, Ohio 45103-3033
513.732.8175  voice
513.732.7592  facsimile
www.DHoffmann@co.clermont.oh.us

COUNSEL FOR APPELLEE THE STATE OF OHIO

IN THE SUPREME COURT OF OHIO

State of Ohio,                      *
     Plaintiff-Appellee,             Supreme Court Case No.  97-1312
                     *
     vs.                             Memorandum in Opposition to
                   *    Appellant's Application for
Jesse Cowans,                          Reopening under S.Ct.Prac.R. XI(5)
     Defendant-Appellant.  *

The State of Ohio, Appellee, by and through the Office of
the Clermont County Prosecuting Attorney, Donald W. White,
objects to Appellant Jesse Cowans's application for reopening,
which was filed January 23, 2004.

<u>Statement of Facts</u>

On the morning of August 29, 1996, Clara Swart was preparing
for a Clermont-County-Senior-Services outing.  When the bus
arrived at 8:00 A.M. at her home at 3142 Lindale-Mt. Holly Road,
in Clermont County, however, she never appeared.  The driver,
Linda Boone, honked her horn, had Senior Services place calls,
and even knocked on the back door.

Her body was discovered that evening by her son, Timothy
Swart.  He found Clara tied to a kitchen chair and suspended from
the door handle of her refrigerator.  An autopsy confirmed that
Clara died of asphyxiation due to strangulation.

Investigators eventually suspected Appellant Jesse Cowans,
who was on parole for murder and had been seen talking with Clara
the day before she was found dead.  A palm print found on the
plastic cover of mixer in Clara's kitchen was found to be his.

Investigators visited Cowans' house, which was located

nearby at 3194 Back Run Road.  There, Cowans' wife, Judy, informed investigators that Cowans had left town for several days.  Sandra Higgins, Cowans' parole officer, conducted a parole search on the basis of Cowans' near two-day absence.  Authorities found a clown figurine in the closet of Cowans' bedroom. Clermont County Sheriff's Deputies recognized it as missing from the Swart residence.

In a wooded area behind Cowans' house, deputies found two pillow cases, as well as other items missing from Clara's residence: specifically, two jewelry boxes, their contents strewn about, and an adding machine.

On September 2, 1996, Cowans arrived at his residence and was promptly arrested and advised of his rights under the *Miranda* rule.  Cowans mentioned to a deputy who drove him to jail that the victim had been hung.  This information had not been released to the public, however.

After Cowans had been processed at the jail, a piece of his shirt was obtained and used to scent a bloodhound.  The dog was taken behind Clara's house and provided with Cowans' scent.  From there, the dog led deputies across a woods to the discarded, stolen items found behind Cowans' residence.

At the jail, Cowans told a cell mate, Marvin Napier, that he was in Clara's house when the Senior-Services bus arrived.  He told Napier that he confronted Clara as she was using the commode.  Although still in her night gown, she had on earrings. Cowans pulled her from the commode, tied her to a chair with a

2

telephone cord and tied her by the neck to the handle of the refrigerator with an electric cord.  He then strangled her with a purse strap.  Cowans told Napier that he regretted not having taken the earrings and a wedding band.

Cowans' indictment contained eight counts: Count 1 charged Cowans with aggravated murder under R.C. 2903.01(A); and Counts 2 through 4 charged him under the felony-murder provisions in subsection B of the statute.  Count 2 alleged the simultaneous commission of aggravated robbery; Count 3, aggravated burglary; and Count 4, kidnaping.  Counts 1 through 4 contained four death specifications: specifically, prior-murder, aggravated robbery, aggravated burglary and kidnaping specifications.

Counts 5 through 8 charged Cowans with aggravated robbery with physical harm, aggravated burglary with physical harm and two counts of kidnaping; one to facilitate a felony and another to terrorize or inflict serious physical harm.

After a trial, during which Cowans was represented by appointed counsel, Michael P. Kelly and Bruce S. Wallace, a jury returned verdicts of guilty as to each count and specification, save and except the prior-murder specification, which was reserved for the trial court's determination.  Cowans was also found guilty of that specification.  The jury recommended death. The trial court imposed that penalty as to Counts 1 through 4, and three, consecutive, ten year sentences as to Counts 5 through 8, the convictions under Counts 7 and 8 having been merged for purposes of sentencing.

3

On April 3, 1998, Laney Hawkins, an Assistant Public Defender of the Ohio State Public Defenders Office, filed a petition for postconviction relief. Relief was denied. On appeal from the denial of postconviction review, Cowans was represented by Laney Hawkins and co-counsel, Luz Lopez-Ortez. The Court of Appeals for Clermont County affirmed. *State v. Cowans* (Sept. 7, 1999), Clermont App. No. CA98-10-090, jurisdiction declined (2000), 87 Ohio St.3d 1489, 722 N.E.2d 524. Cowans was represented on direct appeal to this Court by appointed attorneys Carol Wright and Kristin Burkett. On October 20, 1999, this Court affirmed. *State v. Cowans*, 87 Ohio St.3d 68, 1999-Ohio-250, 717 N.E.2d 298. On January 23, 2004, four years beyond the expiration of the ninety-day deadline, Cowans filed an application to reopen pursuant to S.Ct.Prac.R. XI(5).

<u>Argument</u>

There are two reasons to deny the application to reopen. The first is that it was not timely filed, and Cowans cannot show good cause for the delay. An application for reopening must be filed within ninety days of the filing of the decision in the direct appeal. S.Ct.Prac.R. XI(5)(A). According to the Staff and Committee Notes accompanying 1996 amendments to the rule, procedures are intended to track the provisions of App.R. 26(B). Thus, just as in the case of a motion filed pursuant to App.R. 26(B), an application filed in this Court must be filed within 90 days from the entry of the judgment in the direct appeal. S.Ct.Prac.R. XI(5)(A). Failure to comply is jurisdictional.

4

See, *State v. Spaulding* (1994), 71 Ohio St.3d 228, 643 N.E.2d 112 (Interpreting App.R. 26(A)). To avoid default, an applicant must establish good cause for failing to file within 90 days from the entry of judgment. See, *State v. Fox* (1998), 83 Ohio St.3d 514, 700 N.E.2d 1253 (Interpreting App.R. 26(A)).

Here, Cowans missed the filing deadline by four years. His only claim of good cause is that the State Public Defenders Office had not assigned current counsel to the task of reviewing his case until December 2003. But other Assistant Ohio State Public Defenders were representing him on the action for postconviction relief at the time the decision in the direct appeal was announced, and the claim of ineffective assistance of appellate counsel must be raised at the first opportunity. *State v. Williams*, 74 Ohio St.3d 454, 1996-Ohio-313, 659 N.E.2d 1253. Thus, delay due to scheduling of the public defender will not constitute good cause. *Id.* This reflects traditional notions that simple attorney neglect is not a reason for excusing a litigant's failure to comply with time requirements. See, e.g., *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Comm'rs.*, 72 Ohio St. 3d 464, 1995-Ohio-49, 650 N.E.2d 1343. There is a difference between civil and criminal practice, but this does not automatically mean that criminal defendants should be afforded greater leniency. *State v. Sweeney* (1999), 131 Ohio App. 3d 765, 768, 723 N.E.2d 655.

Here, the Assistant State Public Defender representing Cowans could have been directed to examine the appeal soon after

5

the conviction was affirmed in order to discover what went wrong.
The Ohio State Public Defender's delay in filing the application
to reopen can be imputed to Cowans.

The second reason for denial of the application is that its
claims are meritless.  To have merit, an application for
reopening must present "a genuine issue as to whether the
applicant was deprived of the effective assistance of counsel on
appeal."  S.Ct.Prac.R. XI(5)(E); *State v. Murnahan* (1992), 63
Ohio St.3d 60, 66, 584 N.E.2d 1204.  The claim would necessarily
involve an omitted proposition of law, but appellate counsel has
a duty to winnow out the weaker arguments and proceed only on the
major ones.  *Jones v. Barnes* (1983), 463 U.S. 745, 751-52, 103
S.Ct. 3308, 77 L.Ed.2d 987.  Further, to determine the adequacy
of the claim, the Court follows the standard set forth in
*Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674, that is, deficiency in the representation of the
appellant and prejudice resulting from such deficiency.  *State v.
Watson* (1991), 61 Ohio St.3d 1, 16, 572 N.E.2d 97.

<u>Proposition of Law No. I:</u>

Trial Counsel were constitutionally ineffective when
they failed to ensure that Appellant's waiver of his
right to present mitigation evidence was knowing,
intelligent, and voluntary.

Cowans' first claimed omission of appellate counsel is the
proposition of law that trial counsel was ineffective for failing
to make a record of the knowing, intelligent and voluntary

6

character of his waiver of all mitigation evidence.

Appellate counsel challenged the validity of the waiver on direct appeal. This Court upheld it. *State v. Cowans*, 87 Ohio St.3d 68, 86, 1999-Ohio-250, 717 N.E.2d 298. Thus, the predicate fact upon which the omitted ineffective assistance of trial counsel claim would have been based was found not to exist. Therefore, the outcome of the trial would not have changed if the claim had been included. The first proposition of law should be overruled.

Proposition of Law No. II:

Trial counsel were constitutionally ineffective when they failed to establish the blood type found on a swab of blood taken from the crime scene, and to determine whether it belonged to the victim, the defendant, or some unknown assailant.

Proposition of Law No. III:

Trial counsel was constitutionally ineffective when they failed to challenge the state's evidence that a palm print, found in the victim's kitchen, allegedly matched Appellant's palm print.

(Argued Together)

The second and third omitted claims are that trial counsel was ineffective for failing to investigate "loose ends" in the evidence: specifically, a drop of blood found near the victim, and the possible unreliability of the "super-glue process" for collecting a palm print. Cowans argues that if trial counsel

7

could have obtained additional evidence by identifying the blood or challenging the super-glue process, he could have been exonerated.

The additional evidence, which Cowans claims was important at trial, was not provided when these claims were raised in postconviction. *State v. Cowans* (Sept. 7, 1999), Clermont App. No. CA98-10-090, at p.15. Nor is it provided in this action. Thus, Cowans cannot demonstrate that he was prejudiced from trial counsel's conduct or appellate counsel's decision not to raise the claims. See *State v. Watson*. Accordingly, he has not demonstrated that appellate counsel was ineffective on direct appeal to this Court. The second and third propositions of law are with without merit and should be overruled.

Proposition of Law No. IV:

Appellant's death sentence was imposed in an arbitrary and capricious manner, in violation of the Eighth Amendment, when the jury was prevented from hearing relevant mitigation evidence due to Appellant's invalid waiver of mitigation without having his competency examined.

Cowans' fourth proposition of law is that appellate counsel failed to challenge the validity of Cowans' waiver of his right to offer mitigation evidence at trial. As previously indicated, appellate counsel did raise this very argument. *State v. Cowans*, 87 Ohio St.3d 68, 81-86, 1999-Ohio-250, 717 N.E.2d 298. Therefore, Cowans has failed to demonstrate even that appellate

8

counsel had omitted a claim.  The fourth proposition of law should be overruled.

Conclusion

Cowans has failed to demonstrate that appellate counsel was ineffective.  The application for reconsideration should be denied.  The judgment affirming his conviction and sentence should be confirmed.

Respectfully submitted,

David H. Hoffmann  (0005384)
Assistant Prosecuting Attorney
123 North Third Street
Batavia, Ohio 45103-3033
(513) 732-7313

Certificate of Service

I certify that a copy of the above has been sent to Susan M. Roche, Assistant State Public Defender, 8 E. Long Street, 11th Floor, Columbus, Ohio 43215-2998, by regular U.S. Mail, postage prepaid, this 4th day of February, 2004.

David H. Hoffmann
Assistant Prosecutor

10

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                    :

       Plaintiff-Appellee,      :      CASE NO. CA98-10-090

                      :      O P I N I O N

    - vs -                        :      9/7/99

                      :

JESSIE J. COWANS,                 :

       Defendant-Appellant.     :

Donald W. White, Clermont County Prosecuting Attorney, David Henry Hoffmann, 123 North Third Street, Batavia, Ohio 45103, for plaintiff-appellee

David H. Bodiker, Ohio Public Defender, Laney J. Hawkins and Luz V. Lopez-Oritz, 8 East Long Street, 11th Floor, Columbus, Ohio 43215-2998, for defendant-appellant

    **POWELL, P.J.**  Defendant-appellant, Jessie James Cowans, appeals the ruling of the Clermont County Court of Common Pleas to deny his motion for postconviction relief without an evidentiary hearing.  We affirm the decision of the trial court.

    On Thursday morning, August 29, 1996, Clara Swart, age sixty-nine, was preparing for a Clermont County Senior Services Lunch. Swart was in her residence on Lindale Mt. Holly Road in Clermont

County.  In order to get to the lunch, Swart was taking the bus to
a local restaurant.  The last time she was seen alive was at 7:00
a.m., on the driveway of her home.  The bus driver arrived approxi-
mately one hour later, honked her horn and knocked on the back door
of Swart's residence, but Swart did not emerge from the residence.
 At the time the bus driver arrived, appellant was inside Swart's
residence.

Appellant entered Swart's residence and confronted Swart while
she was using the commode.  Appellant tied Swart to a chair with a
telephone cord and tied her by the neck to the refrigerator with an
electrical cord.  Appellant strangled Swart with a purse strap.
After the bus left, appellant filled two pillowcases with stolen
items and returned to his residence.  Appellant left most of the
stolen items in a wooded area in his backyard.  He put a clown
figurine as well as some jewelry in his room.

Swart's son Timothy discovered the body.  An autopsy showed
Swart died of asphyxiation due to strangulation.  Appellant's palm
prints were found on the plastic cover of a mixer in the kitchen.
Appellant's wife, Judy Robertson Cowans, who was separated from
appellant, informed the police that appellant had left town for
several days.  Based upon his absence, Sandra Higgins, appellant's
parole officer, conducted a parole search of the Cowans residence.
Higgins found the clown figurine.  With the assistance of a blood-
hound, the police found the two pillowcases as well as other items
appellant had taken from Swart's residence.  Before his arrest,

appellant told a neighbor, Mamie Trammel, how terrible it was that someone had hung a lady to a refrigerator. At that point in time, none of the details of the crime had been publicized. At this point in the investigation, appellant was arrested. Appellant later confessed his crime to his cellmate, Marvin Napier. The description appellant gave Napier included details not yet released to the public.

Appellant was indicted on eight counts: (1) aggravated murder; (2) felony murder in the commission of aggravated robbery; (3) felony murder in the commission of burglary; (4) felony murder in the commission of kidnapping; (5) aggravated robbery with serious physical harm; (6) aggravated burglary with physical harm; (7) kidnapping to facilitate the commission of a felony; and (8) kidnapping to terrorize, or inflict serious physical harm upon the victim. The four murder counts each included four separate death penalty specifications: (1) prior murder conviction; (2) aggravated murder committed during an aggravated robbery; (3) aggravated murder committed during aggravated burglary; and (4) aggravated murder committed during kidnapping.

Appellant received a trial by jury and was found guilty on all counts. In the penalty phase, appellant waived the presentation of mitigating evidence. After the penalty phase, the jury recommended the sentence of death. The trial court imposed that penalty as part of appellant's sentence. From that decision, appellant filed a direct appeal as of right to the Supreme Court of Ohio which is

currently pending.

Appellant filed a petition for postconviction relief on April 3, 1998.  Pursuant to R.C. 2953.21(D), appellee moved for judgment on June 26, 1998.[1]  On September 21, 1998, the trial court granted the motion, dismissing all of appellant's claims without an evidentiary hearing.  From that decision, appellant filed a timely notice of appeal with this court and presents two assignments of error for our review.

At oral argument for the above-captioned appeal, this court sua sponte raised the issue of whether we had subject matter jurisdiction over this appeal.  This issue arose due to changes in both the direct appeal and postconviction relief procedures for death penalty cases in Ohio.  First, for convictions in which the death penalty was imposed, any direct appeal must be filed with the Supreme Court of Ohio as of right.  The courts of appeal in Ohio no longer have jurisdiction to decide a direct appeal of any case in which the death penalty is imposed.  Sections 2(B)(2)(c) and 3(B)(2), Article IV, Ohio Constitution.  Second, a postconviction relief motion must be filed within one hundred eighty days of "the date on which the trial transcript is filed in the supreme court."  R.C. 2953.21(A)(2).  The question is whether, under these new procedural rules, a court of appeals may rule on a death penalty post-

---

1.  Appellant argues that appellee's motion was for summary judgment and that appellee did not meet the burden imposed on the moving party for granting summary judgment pursuant to Civ.R. 56(C).  We find that appellant moved for judgment, analogous to Civ.R. 12, and the trial court properly entered judgment in appellee's favor.  See State v. Lawson (1995), 103 Ohio App.3d 307, 313.

- 4 -

conviction relief appeal while the direct appeal remains pending in
the Supreme Court of Ohio.  Cf. <u>State v. Smith</u> (Mar. 19, 1996),
Butler App. No. CA96-02-024, unreported (direct appeal was adjudi-
cated by the Supreme Court of Ohio before this court ruled on trial
court's denial of Smith's postconviction relief motion).

Both parties filed supplemental briefs on this question.  The
postconviction relief statute, by its procedural structure, pro-
vides that a postconviction relief motion must be filed with the
trial court within one hundred eighty days after the transcript is
filed for the direct appeal.  This requirement has placed this
court in the position of reviewing the trial court's dismissal of
appellant's postconviction relief motion while his direct appeal is
still pending in the Supreme Court of Ohio.  Nevertheless, the
statute, enacted by the legislature, implicitly allows for this
possibility.  Thus, we conclude that this court does have jurisdic-
tion over this appeal.

> Assignment of Error No. 1:
>
> THE TRIAL COURT ERRED IN GRANTING THE STATE'S
> MOTION FOR JUDGMENT PURSUANT TO R.C. 2953.-
> 21(D), DISMISSING APPELLANT'S POST-CONVICTION
> PETITION (T.d. 406) IN VIOLATION OF APPELLANT'S
> RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND
> FOURTEENTH AMENDMENTS TO THE UNITED STATES CON-
> STITUTION.

In the first assignment of error, appellant alleges that the
trial court erred by dismissing his petition for postconviction
relief.  Appellant's petition contains twenty separate grounds for
relief.  Before addressing the merits of these claims, we review

- 5 -

Ohio's postconviction relief statute, R.C. 2953.21.

R.C. 2953.21(A)(1) provides that:

> Any person who has been convicted of a criminal
> offense or adjudged a delinquent child and who
> claims that there was such a denial or
> infringement of the person's rights as to ren-
> der the judgment void or voidable under the
> Ohio Constitution or the Constitution of the
> United States may file a petition in the court
> that imposed sentence, stating the grounds for
> relief relied upon, and asking the court to va-
> cate or set aside the judgment or sentence or
> to grant other appropriate relief.  The peti-
> tioner may file a supporting affidavit and
> other documentary evidence in support of the
> claim for relief.

A petitioner is not automatically entitled to an evidentiary hearing upon filing a petition for postconviction relief. State v. Jackson (1980), 64 Ohio St.2d 107, 110.  In determining whether a hearing is warranted, a petitioner bears the initial burden to pro-vide evidence containing sufficient operative facts to demonstrate a cognizable claim of constitutional error. State v. Kapper (1983), 5 Ohio St.3d 36, 37-38, certiorari denied, 464 U.S. 856, 106 S.Ct. 174.

A claim for postconviction relief may be dismissed as res jud-icata.  A claim is res judicata if it was raised or could have been fairly raised at trial, or on direct appeal where the defendant had appellate counsel. State v. Cole (1982), 2 Ohio St.3d 112, 115. An exception may apply if the petitioner provides "competent, rele-vant, and material evidence" dehors the record. State v. Smith (1985), 17 Ohio St.3d 98, 101.  The evidence dehors the record can-

- 6 -

not merely repackage similar evidence or issues that could have been raised on direct appeal. State v. Lawson (1995), 103 Ohio App.3d 307, 315. The evidence dehors the record must materially advance a constitutional claim of the petitioner. Id. If the new evidence is "marginally significant and does not advance the petitioner's claim beyond a mere hypothesis and a desire for further discovery," res judicata still applies to the claim. Keeping these standards in mind, we address appellant's twenty claims for post-conviction relief.

In the first claim for relief, appellant argues that the three-page limit imposed to argue each ground for relief in a petition for postconviction relief is unconstitutional. See Crim.R. 35(A). Although Crim.R. 35(A) does require brevity in arguing each individual claim, we find the page limitation constitutional. See State v. Clemons (Apr. 30, 1999), Hamilton App. No. C-980456, unreported, at 5-6, citing State v. Davis (1991), 62 Ohio St.3d 326. Thus, the first claim for relief is without merit.

In the second claim for relief, appellant argues that the trial court failed to give a "unanimity" charge for the death penalty specifications, which attached to appellant's crimes. A "unanimity" charge would inform the jury that all twelve jurors must agree on which aggravating circumstance the jury was using in order to justify the sentence of death. This claim does not include any evidence dehors the record which would justify an evidentiary hearing on this claim, and the claim can be fully litigated upon direct

- 7 -

appeal.  The claim is, therefore, <u>res judicata</u>.

In the third claim for relief, appellant argues that his trial counsel was ineffective by failing to protect appellant's constitutional right to have mitigating evidence presented during the penalty phase of the trial.  To demonstrate ineffective assistance of counsel, appellant must satisfy a two prong test:  (1) show that counsel's representation fell below an objective standard of reasonableness; and (2) show that counsel's actions prejudiced appellant at trial.  <u>Strickland v. Washington</u> (1984), 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068.  Prejudice means "a reasonable probability that, but for counsel's actions, the result of the proceeding would have been different."  <u>Id.</u> at 694, 104 S.Ct. at 2068. Moreover, an appellate court may assume deficient performance "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice."  <u>State v. Loza</u> (1994), 71 Ohio St.3d 61, 83.  It is settled that "where a defendant is represented by new counsel on appeal, a claim of ineffective assistance of counsel is capable of [direct] review and therefore may be barred under the doctrine of <u>res judicata</u> from being raised in a later postconviction relief petition."  <u>Lawson</u> at 316.

At the beginning of the penalty stage of the trial, appellant informed the court that he did not want any mitigating evidence presented on his behalf.  In addition, appellant informed the court that he did not wish to make any statement on his behalf, whether under oath or not under oath.  The court had the following colloquy

with appellant on April 10, 1997:

THE COURT:  Mr. Cowans, you heard what your attorney has stated to me.  First of all, is it my understanding you do not wish to present any evidence in mitigation, sir?

THE DEFENDANT: Yes, sir.

THE COURT:  Is it also my understanding that you instructed the witnesses not to --

THE DEFENDANT:  Yes, sir.

THE COURT:  -- assist and participate with the experts that are going to testify?

THE DEFENDANT:  Yes.

THE COURT:  Do you mind telling me why, Mr. Cowans, you do not wish to proceed in a mitigation hearing?

THE DEFENDANT:  I feel that it would be biased. I feel that I can't get a fair shake out of a jury that found me guilty on something I didn't do.

THE COURT:  You understand, Mr. Cowans, that if you do not offer any evidence in mitigation the jury will probably come but to one decision and that is the death penalty?

THE DEFENDANT:  That's the decision they're gonna come to anyway.

THE COURT:  You understand further, sir, that your attorney –

THE DEFENDANT:  Yes, I understand it all, sir.

THE COURT:  You know your attorneys have prepared for the mitigation hearing by –

THE DEFENDANT:  And under my direction I don't want no mitigation hearing.

THE COURT:  You understand they do have witnesses that they are ready to put on through?

- 9 -

THE DEFENDANT:  No, no witnesses, nothing.

THE COURT:  All right.  But you do understand they are available?

THE DEFENDANT:  Yes, I do, I understand that.

The following day, April 11, 1997, the court had the following colloquy with appellant, his trial counsel and the court:

> Mr. Wallace:  Your honor, we have discussed again with Jessie this morning, Mr. Kelly and myself along with Mr. Crates and Dr. Smalldon have met with Jessie again this morning to again discuss the decision put on the record yesterday.  It is again our understanding that even after further consideration and discussion Mr. Cowans does not wish us to present any evidence or testimony in mitigation in this matter.  It is further our understanding that after discussion and being advised about the possible consequences Mr. Cowans does not wish to make any statement to the court, to the jury either sworn or unsworn on his own behalf at any time during the remainder of these proceedings.

> For the record Mr. Cowans is aware that Dr. Jeff Smalldon, is in fact, present, is here in the courtroom, has testimony prepared to go forward immediately should Mr. Cowans have changed his mind overnight –

> THE DEFENDANT:  (Shaking head.)

> MR. WALLACE:  –– or this morning and is prepared to offer testimony which would be in mitigation in this matter.  This has been, again, discussed with Mr. Cowans, it has been discussed with him the nature of the proposed testimony, he is aware of that and despite all of these facts he is still specifically directing Mr. Kelly and myself not to offer any testimony or evidence on his behalf today.

> THE DEFENDANT:  (Nodding head.)

> THE COURT:  You understand – is that a correct

- 10 -

statement, Mr. –

THE DEFENDANT:  Yes, sir.
THE COURT:  -- Cowans?

THE DEFENDANT:  Yes, sir.

THE COURT:  You understand you have the right
to present testimony?

THE DEFENDANT:  Yes.

THE COURT:  And you decided not to; is that
correct, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  In addition to that you have the
right to make a statement on your behalf to the
jury either under oath or not under oath.

THE DEFENDANT:  (Shaking head.)  No.

THE COURT:  If it's not under oath it's not
subject to cross-examination, you understand
that?

THE DEFENDANT:  Yes, I do understand that.
THE COURT:  You do not wish to make a statement
to the jury, sir?

THE DEFENDANT:  No, sir.

As discussed further in the fifth claim for relief, we have

reviewed the evidence <u>dehors</u> the record and do not believe it pre-

sents any evidence that appellant was legally incompetent when he

waived mitigation.  Accordingly, trial counsel was entitled to

respect appellant's wishes.  The trial record indicates trial coun-

sel attempted to convince appellant of the folly of his actions and

would have preferred to present all relevant mitigation on appel-

lant's behalf.  Without sufficient evidence <u>dehors</u> the record to

- 11 -

support appellant's claim, the issue could have been raised on direct appeal and the trial court properly concluded that appellant's claim was <u>res judicata</u>.[2]

In the fourth claim for relief, appellant argues that his trial counsel was ineffective by failing to request that the trial court appoint an independent counsel to present mitigating evidence after appellant refused to allow his trial counsel to present mitigating evidence. Appellant claims that, by refusing to allow his trial counsel to present mitigating evidence in the penalty phase, the attorney-client relationship had broken down. The evidence <u>dehors</u> the record appellant provides is the affidavit of Kristen E. Haskins, Psy.D, whose private practice specializes in clinical and forensic psychology. In paragraph sixteen of her affidavit, Haskins states:

> Once [appellant] was found guilty with death penalty specifications, [appellant] refused to have any mitigation presented in his case. This refusal was deeply rooted in his severe personality pattern disturbance and the fact that his defense team had not been able to establish a sufficient relationship to weather through his mistrust, poor coping skills, and underlying anger and hostility. Descriptions of his loss of control and outbursts in the court room and his refusal of mitigation suggest his coping resources had been so severely depleted by the stress of the trial and that he was possibly psychologically decompensated to the point that he was unable to competently

---

2. We note that in <u>State v. Ashworth</u> (1999), 85 Ohio St.3d 56, the Supreme Court of Ohio addressed the standard a trial court must follow to ensure a waiver of mitigation by a defendant is knowing and voluntary. This issue was not raised in appellant's postconviction relief petition. In any event, the issue could be fully litigated upon direct appeal. A petition for certiorari in <u>Ashworth</u> was filed with the United States Supreme Court on July 27, 1999.

proceed.

We find nothing in this statement, beyond speculation, to suggest that appellant was legally incompetent to waive the presentation of mitigation. Moreover, the fact, by itself, that appellant refused mitigation does not suggest the attorney-client relationship had broken down. Finally, the Supreme Court of Ohio has found that there is no constitutional requirement that a defendant present mitigating evidence in the penalty phase. Ashworth, 85 Ohio St.3d at 63-66.

In the fifth claim for relief, appellant argues that trial counsel was ineffective by failing to request a competency evaluation after appellant waived the presentation of mitigating evidence. In Ashworth, the court stated that "[a] defendant is mentally competent to forgo the presentation of mitigating evidence in the penalty phase of a capital case if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence. The defendant must fully comprehend the ramifications of his decision and must possess the ability to reason logically, i.e., to choose means that relate logically to his ends." Id. at 69. However, as noted, a competency evaluation is not required in every circumstance in which a defendant waives mitigation in the penalty phase of a capital case. Id. at 62. "[A]bsent a request by counsel, or any indicia of incompetence, a competency evaluation is not required." Id.

- 13 -

As we stated in the fourth claim for relief, we do not find the record suggests appellant may have been legally incompetent when he waived mitigation.  Dr. Haskins' affidavit, while replete with the particulars of appellant's "severe personality pattern disturbance," does not provide any credible evidence that appellant was legally incompetent during the penalty phase of his trial.  We fail to see any evidence <u>dehors</u> the record which would justify an evidentiary hearing on this claim.  Therefore, the claim can be addressed on direct appeal and is, therefore, <u>res judicata</u>.

In his sixth claim for relief, appellant argues that his trial counsel was ineffective by failing to proffer the result of a psychological examination of appellant given by Jeffrey L. Smalldon, Ph.D.  We have reviewed Dr. Smalldon's affidavit.  The affidavit contains numerous examples of potentially mitigating evidence as well as Dr. Smalldon's medical conclusion that appellant's refusal to present mitigation may be related to his personality disorder.  The affidavit does not state that appellant was legally incompetent to waive mitigation in the penalty phase.  We do not believe the Smalldon affidavit reaches the threshold standard of cogency which would justify an evidentiary hearing on this claim.

In his seventh claim for relief, appellant argues that the trial court erred by failing to order a psychological examination of appellant after he waived mitigation.  For the reasons given in our discussion of the fifth claim for relief, we find this claim is not well-taken.

- 14 -

In his eighth claim for relief, appellant argues that the trial court erred by denying his motion for change of venue based on media publicity regarding the case. Appellant claims this issue is not <u>res judicata</u> based on a jury questionnaire and newspaper articles <u>dehors</u> the record. However, this evidence is part of the trial record and was considered in the trial court's decision. Thus, the eighth claim could have been raised on direct appeal and is barred by <u>res judicata</u>.

In his ninth claim for relief, appellant argues that his trial counsel was ineffective by failing to establish the blood type on a cotton swab taken from the crime scene. Appellant does not provide any evidence <u>dehors</u> the record to support this claim. This claim could have been raised on direct appeal and is therefore <u>res judi-cata</u>.

In the tenth claim for relief, appellant argues that trial counsel was ineffective by failing to introduce expert testimony concerning the "super-glue" method of identifying and preserving fingerprints. The "super-glue" method was utilized to identify appellant's palm prints on the plastic mixer cover found in the victim's kitchen. We do not find any evidence <u>dehors</u> the record to support this claim. We conclude this claim raises an issue appropriate for direct appellate review and is, therefore, <u>res judicata</u>.

In the eleventh claim for relief, appellant argues that his trial counsel was ineffective by failing to conduct an adequate voir dire. Appellant argues that two biased jurors were impaneled

- 15 -

to decide his case.  Appellant bases his claim on jury question-
naires completed by Jim Coffman and Linda LaDow.  However, the rel-
evant portion of the jury questionnaires were read into the record
during voir dire.  This claim can be fully litigated upon direct
appeal and is, therefore, res judicata.

In his twelfth claim for relief, appellant argues that the
trial court deprived appellant of a fair trial by not sua sponte
excusing jurors Coffman and LaDow.  For the reasons given in the
discussion of the eleventh claim for relief, we find this claim is
res judicata.

In his thirteenth claim for relief, appellant argues that his
trial counsel was ineffective by failing to sufficiently challenge
the validity of a warrantless search.  Specifically, he argues
counsel failed to raise whether the consent given by his wife to
search their residence was valid.  Appellant presents, by his affi-
davit, evidence dehors the record that he would not have consented
to a search of his separate bedroom.  The trial court, in dismiss-
ing claim thirteen, concluded that the search was based on the rea-
sonable belief of the police that appellant's wife had the author-
ity to consent to the search.  Illinois v. Rodriquez (1990), 497
U.S. 177, 188-89, 119 S.Ct. 2793, 2801.  We agree with the reason-
ing and conclusion of the trial court.  Appellant's trial counsel
filed a motion to suppress and we cannot conclude their actions
fell below any objective standard of reasonableness.  Thus, the
thirteenth claim for relief is not well-taken.

- 16 -

In his fourteenth claim for relief, appellant argues that the trial court erred by admitting evidence seized during the warrantless search of the Cowans' residence. Based on the reasoning given in our analysis of the previous claim, we find this claim is not well-taken.

In the fifteenth claim for relief, appellant argues that his trial counsel was ineffective by failing to refute certain incriminating evidence with expert witnesses. Specifically, appellant claims his trial counsel failed to sufficiently investigate other possible suspects, and failed to request funds to hire an expert to establish a time of death and a bloodhound expert. In support of this claim, appellant presents three exhibits: his own affidavit, the affidavit of Steven Schlechty, the Chaplain at the Clermont County Jail, and the affidavit of Judy Robertson Cowans, appellant's wife.

Having reviewed all of these exhibits, none of them present any evidence _dehors_ the record sufficient to support this claim. The fact that appellant states a different version of events in an affidavit and claims he did not kill the victim, without any independent evidence, does not justify an evidentiary hearing on this claim. The affidavits of Schlechty and Judy Robertson Cowans also do not include any evidence _dehors_ the record which would justify an evidentiary hearing.

In the sixteenth claim for relief, appellant argues that the trial court erred by not suppressing incriminating statements

- 17 -

appellant made to Deputy Robert Evans.  We find this claim raises an issue which is capable of being fully litigated upon direct appeal.  The evidence <u>dehors</u> the record, appellant's affidavit, lacks sufficient cogency to justify an evidentiary hearing.  Thus, the claim is <u>res judicata</u>.

In the seventeenth claim for relief, appellant argues that the trial court erred by overruling appellant's motion for twelve peremptory challenges.  "Ohio law permits only six peremptory challenges in a death penalty case ***."  <u>State v. Mills</u> (1992), 62 Ohio St.3d 357, 365.  We find this claim can be fully litigated on direct appeal and is, therefore, <u>res judicata</u>.

In the eighteenth claim for relief, appellant argues that the trial court erred by failing to <u>sua sponte</u> request that both trial counsel for appellant and the prosecution provide a gender neutral reason for each peremptory challenge.  See <u>J.E.B. v. Alabama ex rel. T.B.</u> (1994), 511 U.S. 127, 146, 114 S.Ct. 1419, 1430 (holding that the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender).  However, counsel need not provide such an explanation unless "the opponent of a peremptory challenge has made out a prima facie case of [] discrimination[.]"  <u>Purkett v. Elem</u> (1995), 514 U.S. 765, 767, 115 S.Ct. 1769, 1770.  We find this claim does not raise any evidence <u>dehors</u> the record to support a finding of discrimination and could have been raised on direct appeal.  The claim is, therefore, <u>res judicata</u>.  For the same reason, appellant's nineteenth claim, that his trial counsel

- 18 -

was ineffective by failing to object to the trial court's decision that counsel for the prosecution and appellant need not provide a reason for each peremptory challenge, is res judicata.

In the twentieth claim for relief, appellant argues that the death penalty, when administered by electrocution, is cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution. We find this claim raises an issue which can be fully litigated upon direct appeal and is, therefore, res judicata.

Upon review, we find that none of appellant's twenty claims for postconviction relief warrant an evidentiary hearing. Thus, the first assignment of error is overruled.

> Assignment of Error No. 2:
>
> THE TRIAL COURT ERRED IN FAILING TO RULE ON APPELLANT'S MOTIONS FOR REQUEST OF FUNDS FOR EXPERT ASSISTANCE (T.d. 388, 390) EFFECTIVELY OVERRULING THE MOTIONS BEFORE IT DISMISSED APPELLANT'S POST-CONVICTION PETITION IN VIOLA-TION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

In the second assignment of error, appellant argues that the trial court erred by failing to provide funds for expert assis-tance. The expert assistance was requested in order to prove appellant's claims that his trial counsel provided ineffective assistance by failing to introduce expert testimony on a variety of issues. We have previously ruled that a petitioner for post-conviction relief has no right to discovery until it is determined

- 19 -

an evidentiary hearing is warranted.  State v. Smith (Aug. 31,

1998), Butler App. No. CA97-12-223, unreported, citing State v.

Smith (1986), 30 Ohio App.3d 138, 140.  Similarly, appellant has no

right to funds for expert assistance to pursue discovery until it

is determined an evidentiary hearing is warranted.  Thus, the sec-

ond assignment of error is overruled.

Judgment affirmed.

WALSH and VALEN, JJ., concur.

# EXHIBIT C

# The Supreme Court of Ohio

FILED

100-088

AUG 0 4 2004

MENGEL, CLERK
SUPREME COURT OF OHIO

State of Ohio,
    Appellee,
        v.
Jessie James Cowans,
    Appellant.

Case No. 97-1312

E N T R Y

      This cause came on for further consideration upon the filing of an application for reopening under S. Ct. Prac. R. XI, Section 6. Upon consideration thereof,

      IT IS ORDERED by the Court that the application for reopening be, and hereby is denied.

    (Clermont County Court of Common Pleas; No. 96CR005394)

THOMAS J. MOYER
Chief Justice