# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JESSE J. COWANS**,
*Petitioner,*

v.

**MARGARET BAGLEY, Warden,**
*Respondent.*

Case Number: C-1-00-618

Civil Action

JUDGE SARGUS
MAGISTRATE JUDGE ABEL

(Death Penalty Case)

---

## RESPONDENT BAGLEY'S RESPONSE TO PETITIONER COWANS' SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS

---

Respectfully submitted,

**JIM PETRO**
**Attorney General**

 /s/ Daniel R. Ranke
DANIEL R. RANKE (0047136)
(Trial Counsel) Assistant Attorney General
Capital Crimes Section
615 W. Superior Ave., 11th Floor
Cleveland, Ohio 44113
(216) 787-3030
(216) 787-3480 (fax)
CCSReview@ag.state.oh.us

**COUNSEL FOR RESPONDENT**

## MEMORANDUM IN SUPPORT

### I.    Procedural History

On July 31, 2000, Petitioner Cowans filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 5) Cowans correctly stated in the introductory paragraph that his July 31, 2000, petition was filed in accordance with this Court's directive to file a "shell petition" in conjunction with Cowans' petition for a stay of execution and request for appointment of counsel. Cowans specifically reserved the right to amend his petition at a later date. Cowans' "shell petition" contained nine (9) grounds for relief.

On October 31, 2000, this Court conducted a status conference during which Petitioner was given leave to file an amended petition for writ of habeas corpus. On May 3, 2001, Cowans filed his amended petition for writ of habeas corpus. (ECF No. 15) Cowans' amended petition contained twelve (12) grounds for relief. All claims initially raised in Petitioner Cowans "shell petition" were reasserted in the amended petition with the exception of the following:

> Petitioner Was Denied The Effective Assistance Of Counsel In Violation Of The U.S. Constitution As There Was A Breakdown In Communication Between The Attorney And Client That Prevented The Attorney From Adequately Preparing And Presenting A Defense. This Breakdown Resulted In A Denial Of Petitioner's Rights As Guaranteed By The Fifth, Sixth, Eighth and Fourteenth Amendments To The U.S. Constitution.

This claim was raised as the first ground for relief in Cowans' "shell petition" but was not contained within Cowans' first amended petition.

On April 8, 2002, Cowans filed a motion for leave to amend his habeas petition to include the above-referenced ground for relief that Petitioner maintained was inadvertently omitted from his previously filed amended petition. (ECF No. 39)

Respondent did not file an opposition to Cowans' motion for leave to amend. On May 22, 2002, this Court granted Cowans' motion for leave to amend his petition. (ECF No. 44) Cowans' amendment was filed on June 12, 2002. (ECF No. 45) On July 1, 2005, Respondent filed her response to Cowans' first amended petition. (ECF No. 46)

On January 23, 2004, Cowans filed a motion to stay the case pending the state court ruling on Cowans' recently filed application to reopen his direct appeal pursuant to App.R. 26(B). (ECF No. 64) Respondent opposed Cowans' motion to stay on February 2, 2004. (ECF No. 65) On September 28, 2004, this Court granted Cowans' motion to stay pending the state court disposition of Cowans' 26(B) application. (ECF No. 66) On August 9, 2004, the Ohio Supreme Court denied Cowans' 26(B) application to reopen his direct appeal. (See Status Report, ECF No. 67)

On November 3, 2004, Cowans filed a second motion for leave to file an amended petition for writ of habeas corpus seeking to assert a fourteenth ground for relief arising out of the ineffective assistance of appellate counsel claims that had recently been exhausted in the Ohio state courts through Cowans' 26(B) application. (ECF No. 68) Respondent once again opposed Cowans' motion. (ECF No. 70) On September 9, 2005, this Court granted Cowans' second motion for leave to file an amended habeas corpus petition. (ECF No. 72) At a subsequent status conference, the parties jointly agreed that Respondent's merit brief in response to Cowans' fourteenth ground for relief would be due by November 18, 2005. Respondent's merit brief now follows.

## DISCUSSION OF CLAIMS PRESENTED

### Fourteenth Ground for Relief

**Petitioner Cowans Was Not Denied The Effective Assistance Of Appellate Counsel On Direct Appeal To The Ohio Supreme Court and Cowans' Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution Were Not Violated.**

### I.    Procedural Posture

Cowans presented this argument to the Ohio Supreme Court in his untimely application to reopen his direct appeal filed pursuant to Ohio App.R. 26(B) on January 23, 2004, over four years after completion of Cowans' direct appeal. See ECF No. 74, Supplement to Joint Appendix, Exhibit A. The Ohio Supreme Court denied Cowans' untimely 26(B) application for reopening on August 4, 2004. See ECF No. 74, Supplement to Joint Appendix, Exhibit C. Specifically, the Ohio Supreme Court stated "This cause came on for further consideration upon the filing of an application for reopening under S.Ct.Prac.R. XI, Section 6. Upon consideration thereof, IT IS ORDERED by the Court that the application for reopening is denied."

### II.    Procedural Default

The Ohio Supreme Court did not address the merits of the ineffective assistance of appellate counsel claims contained within Cowans' untimely 26(B) application to reopen his direct appeal. See Bonilla v. Hurley, 370 F.3d 494 (6th Cir. 2004)(where the state court is silent as to its reasons for denying requested relief, the federal habeas court assumes that the state court would have enforced any applicable procedural bar). See also Simpson v. Sparkman, 94 F.3d 199, 203 (6th Cir. 1996). Since Cowans did not fairly present this claim to the Ohio courts, it is defaulted. Rust v. Zent, 17 F.3d 155, 160

(6th Cir. 1994).   Therefore, for this reason and the reasons previously set forth in Respondent's return of writ (ECF No. 36, pp. 24-28) this claim is defaulted in habeas.

### III.    Statute of Limitations

Cowans' ineffective assistance of appellate counsel claim was not included in the previously filed habeas petitions.   Although Petitioner has raised a total of thirteen separate grounds for relief in habeas and the underlying facts of this claim were clearly known to Petitioner throughout these proceedings, Cowans failed to specify any claim concerning the ineffective assistance of appellate counsel relating to (a) Cowans' waiver of the right to present mitigation evidence; (b) trial counsels' failure to establish the blood type of a blood sample allegedly connected to the crime scene; (c) trial counsels' failure to challenge the evidentiary value of a partial palm print discovered in the victim's kitchen matching Cowans' palm print; and (d) that Cowans' waiver, without the benefit of a competency evaluation, prevented the jury from considering purportedly relevant mitigation evidence.   The fact that Petitioner Cowans had not yet exhausted this claim in the state courts at the time of the initial habeas filings is not sufficient justification for disregarding the one-year statute of limitations under AEDPA.   A Rule 26(B) application to reopen a direct appeal may, under certain circumstances, serve to toll the statute of limitations however it does not ever restart the AEDPA limitations period.   Searcy v. Carter, 246 F.3d 515, 519 (6th Cir. 2001).   In this instance, the fact that Cowans filed his 26(B) application well after the expiration of the one-year AEDPA limitations period had expired renders tolling inapplicable.   Wheeler v. Jones, 226 F.3d 656, 660 (6th Cir. 2000); Winkfield v. Bagley, 66 Fed Appx. 578; 2003 U.S. App. LEXIS 10789

(unpublished).  Consequently, a habeas claim arising out of Cowans' 26(B) application is barred by the AEDPA one-year statute of limitations.[1]


IV.    **Standard of Review**

This claim involves a mixed question of law and facts, and thus, § 2254(d)(1) is the appropriate reference point.  The relevant inquiry is whether the state courts' rejection of Cowans' ineffective assistance of appellate counsel claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  The Court must essentially determine whether the Ohio courts' decision is contrary to or an unreasonable application of Strickland v. Washington, 466 U.S. 668, 694 (1984).


V.    **Merits**

Cowans erroneously contends that his appellate counsel were ineffective during his direct appeal.  Specifically, Cowans maintains that appellate counsel were ineffective by failing to argue that (a) trial counsel were ineffective by failing to ensure that Cowans' waiver of his right to present mitigation evidence was knowing, voluntary and intelligent, (b) that trial counsel were ineffective when they failed to establish the blood type found on a swab of blood taken from the crime scene and to determine whether it belonged to the Cowans, the victim or an unknown party, (c) trial counsel were ineffective by failing to challenge the state's conclusion that a palm print discovered in the victim's kitchen matched Cowans' palm print and (d) Cowans' death sentence was imposed in an arbitrary

---

[1] Respondent recognizes that this Court has already rejected this argument in its Opinion and Order dated 9/9/05, ECF No. 72 at p. 8.  Respondent reasserts this argument herein for the express purpose of preserving the record.

and capricious manner when the jury was prevented from considering mitigation evidence due to Cowans' waiver of mitigation without first having his competency examined.

The United States Supreme Court has recognized the constitutional right to counsel on the initial direct appeal.  Douglas v. California, 372 U.S. 353 (1963). Furthermore, in Anders v. California, 386 U.S. 738 (1967), the Court set forth minimum standards of appellate representation:

> 1.  Counsel must act as an active advocate for his client and try to his utmost to represent him.
>
> 2.  If, after conscientious examination of the record, counsel finds the appeal to be wholly frivolous, he must advise the court and request permission to withdraw.
>
> 3.  Counsel must submit to the court a brief referring to any arguable basis of appeal.

Anders v. California, 386 U.S at 744.

However, in Jones v. Barnes, 463 U.S. 745 (1983), the Court rejected the argument that competent counsel is obligated to raise every conceivable non-frivolous issue as it held:

> "Most cases present only one, two, or three significant questions. . . . Usually, . . . if you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention.  The effect of adding weak arguments will be to dilute the force of the stronger ones.  R. Stern, Appellate Practice in the United States 266 (1981).

The Court went on to state at Jones v. Barnes, 463 U.S. at 752, 753:

> There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.  This has assumed a greater importance in an era when oral argument is strictly limited in most courts -- often to as little

as 15 minutes -- and when page limits on briefs are widely imposed. See e.g., Fed. Rule App. Proc. 28(g); McKinney's New York Rules of Court §§ 670.17(g)(2), 670.22 (1982). Even in a court that imposed no time or page limits, however, the new per se rule laid down by the Court of Appeals is contrary to all experience and logic. A brief that raises every colorable issue runs the risk of burying good arguments -- those that, in the words of the great advocate John W. Davis, 'go for the jugular,' Davis. The Argument of an Appeal, 26 A.B.A.J. 895, 897 (1940) -- in a verbal mound made up of strong and weak contentions. See generally, e.g., Godbold, Twenty Pages and Twenty Minutes -- Effective Advocacy on Appeal, 30 Sw.L.J. 801 (1976).

It is clear, therefore, that a defendant is not denied the effective assistance of counsel as measured by the test of Strickland v. Washington where he adheres to the guidance of the Supreme Court in Jones v. Barnes. *See also* Evitts v. Lucey, 469 U.S. 387 (1985).

In Smith v. Murray, 477 U.S. 527, 535-536 (1986), the Court again specifically addressed the issue:

> After conducting a vigorous defense at both the guilty and sentencing phases of the trial, counsel surveyed the extensive transcript, researched a number of claims, and decided that, under the current state of the law, 13 issues were worth pursuing on direct appeal. This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 3312-3313, 77 L.Ed.2d 987 (1983). It will often be the case that even the most informed counsel will fail to anticipate a state appellate court's willingness to reconsider a prior holding or will underestimate the likelihood that a federal habeas court will repudiate an established state rule. But, as *Strickland v. Washington* made clear, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'

Once again, the Court made it clear that there is no duty of counsel to raise every conceivable claim but that the best advocacy is to separate the weak and raise only the strong. *See also,* McCoy v. Wisconsin Court of Appeals, 486 U.S. 429 (1988).

In <u>Whiting v. Burt</u>, 395 F.3d 602 (6th Cir. 2005), the Sixth Circuit further detailed the standard to be applied in claims alleging ineffective assistance of appellate counsel. Specifically, The Court concluded:

> There is no dispute, of course, that ineffective assistance of counsel claims are normally governed by the seminal case of *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) and its progeny. The two familiar components of the *Strickland* standard were described by this Court in *Wickline v. Mitchell*, 319 F.3d 813 (6th Cir. 2003) as follows:

>> Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a violation of the right to effective assistance of counsel has two components:

>>> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

>> Id. at 687, 104 S. Ct. 2052.

>>> Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. 2052. To demonstrate that counsel's performance was deficient, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. 2052. To establish prejudice, he "must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. 2052.

>> Wickline, 319 F.3d at 819.

The right to the effective assistance of counsel includes appellate counsel as

well as trial counsel, and in *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.), *cert. denied*, 528 U.S. 946, 145 L. Ed. 2d 284, 120 S. Ct. 369 (1999), this Court, with reference to the first prong of Strickland, listed eleven questions as matters to be considered in determining whether an attorney **on direct appeal** acted in accordance with the objective standard of reasonableness.

Whiting v. Burt, 395 F.3d at 615-616.

In a footnote, the Whiting Court proceeded to list the eleven factors set forth in

Mapes v. Coyle, 171 F.3d at 427-28. Those factors are:

1)    Where the omitted issues "significant and obvious?"

2)    Was there agreeably contrary authority on the omitted issues?

3)    Were the omitted issues clearly stronger than those presented?

4)    Were the omitted issues objected to at trial?

5)    Were the trial court's rulings subject to deference on appeal?

6)    Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7)    What was appellate counsel's level of experience and expertise?

8)    Did the petitioner and appellate counsel meet and go over possible issues?

9)    Is there evidence that counsel reviewed all the facts?

10)   Were the omitted issues dealt with in other assignments of error?

11)   Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Whiting, 395 F.3d at 615-16.

The allegations within Cowans' fourteenth ground for relief encompass well-reasoned defense counsel tactics. It is, of course, manifest that courts "should not conjure up tactical decisions an attorney could have made, but plainly did not." Griffin v.

<u>Warden, Md. Correctional Adjustment Ctr.</u>, 970 F.2d 1355 (4th Cir. 1992). Cowans'
ineffective assistance of appellate counsel claim is entirely comprised of such tactical
challenges. In fact, Cowans' complaints epitomize precisely the type of after the fact
strategic second guessing which is **not** actionable under <u>Strickland</u>. Respondent will now
address each of Cowans' ineffective assistance of appellate counsel sub-claims
separately.

> *(a) Ineffective assistance of appellate counsel arising out of Cowans'*
> *waiver of his right to present mitigating evidence.*

Cowans maintains that appellate counsel were constitutionally ineffective for
failing to argue that trial counsel were ineffective for failing to ensure that Cowans'
waiver of mitigation was knowing, intelligent and voluntary. The Eighth Amendment
guarantees the right to present mitigating evidence of a sentence. <u>Hitchcock v. Dugger</u>,
481 U.S. 393, 394 (1987); <u>Williams v. Taylor</u>, 529 U.S. 362, 393 (2000); <u>see generally</u>
<u>Buchanan v. Angelone</u>, 522 U.S. 269, 276 (1998). A waiver of a fundamental
constitutional right is valid when entered into voluntarily, knowingly, and intelligently.
<u>Brady v. United States</u>, 397 U.S. 742, 749 (1970).

A defendant voluntarily waives a right when he is fully aware of its consequences,
and his waiver was not induced by threats, misrepresentations, or by other improper
conduct. <u>Brady</u>, 397 U.S. at 755. A defendant knowingly and intelligently waives when
he understands the nature and the consequences of his waiver. <u>Moran v. Burbine</u>, 475
U.S. 412 (1986). To determine whether a waiver is knowing and intelligent, the totality
of the circumstances must be examined. <u>Berry v. Minzes</u>, 726 F.2d 1142, 1146 (6th Cir.

1984).   A defendant may learn information from means other than the trial court, including his attorney.  Pitts v. United States, 763 F.3d 197, 200 (6th Cir. 1985).

Prior to accepting Cowans' decision to waive the presentation of mitigating evidence, the trial court engaged Cowans in the following colloquy on April 10, 1997:

THE COURT: Mr. Cowans, you heard what your attorney has stated to me. First of all, is it my understanding you do not wish to present any evidence in mitigation, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Is it also my understanding that you instructed the witnesses not to --

THE DEFENDANT: Yes, sir.

THE COURT: -- assist and participate with the experts that are going to testify?

THE DEFENDANT: Yes.

THE COURT: Do you mind telling me why, Mr. Cowans, you do not wish to proceed in a mitigation hearing?

THE DEFENDANT: I feel that it would be biased. I feel that I can't get a fair shake out of a jury that found me guilty on something I didn't do.

THE COURT: You understand, Mr. Cowans, that if you do not offer any evidence in mitigation the jury will probably come but to one decision and that is the death penalty?

THE DEFENDANT: That's the decision they're gonna come to anyway.

THE COURT: You understand further, sir, that your attorney -

THE DEFENDANT: Yes, I understand it all, sir.

THE COURT: You know your attorneys have prepared for the mitigation hearing by -

THE DEFENDANT: And under my direction I don't want no mitigation hearing.

THE COURT: You understand they do have witnesses that they are ready to put on through?

THE DEFENDANT: No, no witnesses, nothing.

THE COURT: All right. But you do understand they are available?

THE DEFENDANT: Yes, I do, I understand that.

**Exhibit 49, trial transcript, pp. 4-7.**

The following day the trial court once again questioned Cowans and his trial counsel as to Cowans' desire to waive the presentation of mitigating evidence:

MR. WALLACE: Your honor, we have discussed again with Jessie this morning, Mr. Kelly and myself along with Mr. Crates and Dr. Smalldon have met with Jessie again this morning to again discuss the decision put on the record yesterday. It is again our understanding that even after further consideration and discussion Mr. Cowans does not wish us to present any evidence or testimony in mitigation in this matter. It is further our understanding that after discussion and being advised about the possible consequences Mr. Cowans does not wish to make any statement to the court, to the jury either sworn or unsworn on his own behalf at any time during the remainder of these proceedings.

For the record Mr. Cowans is aware that Dr. Jeff Smalldon, is in fact, present, is here in the courtroom, has testimony prepared to go forward immediately should Mr. Cowans have changed his mind overnight -

THE DEFENDANT: (Shaking head.)

13

MR. WALLACE: -- or this morning and is prepared to offer testimony which would be in mitigation in this matter. This has been, again, discussed with Mr. Cowans, it has been discussed with him the nature of the proposed testimony, he is aware of that and despite all of these facts he is still specifically directing Mr. Kelly and myself not to offer any testimony or evidence on his behalf today.

THE DEFENDANT: (Nodding head.)

THE COURT: You understand - is that a correct statement, Mr. -

THE DEFENDANT: Yes, sir.

THE COURT: -- Cowans?

THE DEFENDANT: Yes, sir.

THE COURT: You understand you have the right to present testimony?

THE DEFENDANT: Yes.

THE COURT: And you decided not to; is that correct, sir?

THE DEFENDANT: Yes, sir.

THE COURT: In addition to that you have the right to make a statement on your behalf to the jury either under oath or not under oath.

THE DEFENDANT: (Shaking head.) No.

THE COURT: If it's not under oath it's not subject to cross-examination, you understand that?

THE DEFENDANT: Yes, I do understand that.

THE COURT: You do not wish to make a statement to the jury, sir?

THE DEFENDANT: No, sir.

**Exhibit 50, trial transcript, pp. 25-29**.

In this instance, as the above transcript references clearly demonstrate, the trial court engaged Cowans in a colloquy about waiver of mitigation. The court explained to Cowans his rights during mitigation and informed him that his attorney had prepared witnesses. Furthermore, the court inquired why Cowans did not want to be present and warned him that waiving mitigation would probably result in the imposition of the death penalty. Cowans' attorney also discussed mitigation with him on several occasions before Cowans decided to waive presenting evidence. However, Cowans refused to be present in the courtroom and asked that his mitigation witnesses be equally uncooperative. The court's colloquy, counsel's discussions with Cowans, and the fact that Cowans did not arrive at his decision lightly demonstrate that he understood the implications of his actions and was fully aware of the consequences of his decision. Additionally, Cowans cannot point to any threats, misrepresentations, or improper conduct by the court, prosecutor, or his own attorney that induced him to waive mitigation. It is apparent that Cowans' decision to waive mitigation was in fact knowing, intelligent and voluntary. Trial counsel clearly was not ineffective in this regard. Since trial counsel was not ineffective, it follows that Cowans' appellate counsel were not ineffective for failing to raise an issue on appeal that had and continues to have no arguable merit.

Cowans' sub-claim *a* is without merit in Federal habeas and should be dismissed.

(b)     *Ineffective assistance of appellate counsel arising out of the blood found in the victim's kitchen.*

Cowans maintains that appellate counsel should have raised trial counsels' failure to establish the blood type found on a swab of blood taken from the victim's kitchen and trial counsels' failure to determine whether the blood belonged to Cowans, the victim or an

unidentified third party, as appellate error.  As this Court is already well aware, on April 18, 2001, this Court granted Cowans' request to conduct DNA testing on *untested* genetic material in the possession of the Clermont County Sheriff's Department and the Hamilton County Coroner's Office.  (the Hamilton County Coroner conducts forensic analysis for the Clermont County Coroner in cases such as this)  The DNA material in question was collected and tested.  The results of that test determined that the blood taken from the kitchen of the victim belonged to the victim herself.  See ECF No. 23, Report on Genetic Testing filed with the Court on October 3, 2001.

Clearly, the fact that appellate counsel did not allege trial counsels ineffectiveness based upon the failure to test blood that ultimately belonged to the victim herself cannot be deemed constitutionally ineffective.  Moreover, as previously stated throughout these proceedings, there is simply no indication nor was it ever argued that Cowans was somehow cut or bled at the scene of the murder.  The cause of Mrs. Swart's death was strangulation.  She was not severely cut nor was there significant blood evidence discovered at the scene.  Petitioner Cowans' state court conviction was not based upon the strength of biological evidence but rather, was based upon a matching palm print discovered at the scene of the murder, Mrs. Swart's personal property discovered in Cowans' bedroom and on his property and dog tracking evidence whereby a bloodhound followed Cowans' scent from the victim's residence to Cowans' trailer.  Given that Cowans' conviction was not based upon the existence of blood evidence at the scene but compelling physical evidence and testimony, trial counsel cannot be deemed to have been ineffective for failing to uncover and test an obscure sample of blood DNA evidence on the kitchen floor of the victim's residence ***that did not and still does not exonerate*** their client

nor can appellate counsel be faulted for failing to assign this claim as appellate error. Clearly, Cowans is unable to meet either the deficient performance or the prejudice prongs of the <u>Strickland</u> test for ineffective assistance of appellate counsel.

Cowans sub-claim *b* is without merit in Federal habeas and should be dismissed.

(c)    *Ineffective assistance of appellate counsel arising out of the palm print evidence*

Cowans contends, through this sub-claim, that he was denied his Sixth and Fourteenth Amendment right to the effective assistance on direct appeal by appellate counsels decision not to raise as appellate error trial counsel's purported failure to challenge the admissibility of a palm print discovered in the kitchen of the victim's residence that matched Cowans' palm print.

First, contrary to Cowans's contention, his trial counsel did in fact object to the admissibility of the palm print based upon state's witness Deputy Ed Holt's alleged failure to understand the scientific theory behind the "super glue" method. **Exhibit 45, trial transcript, pp. 1749-1750**. The trial court properly overruled defense counsel's objection on the basis that Deputy Holt was trained in the collection of fingerprints, not the underlying scientific theory. Therefore, Deputy Holt was able to testify regarding the collection of Cowans' palm print from the kitchen of the victim. When one considers that the trial court's ruling regarding the admissibility of the palm print was clearly correct, Cowans' appellate counsel cannot be classified as ineffective for failing to raise this issue on appeal and potentially detract from other more meritorious issues.

Cowans argues further that trial counsel were ineffective for failing to introduce expert testimony regarding the validity and reliability of the "super glue" method for lifting

and identifying fingerprints and this should have been raised as an issue for appellate consideration. However, Cowans has still failed to demonstrate or even allege how the outcome of his capital trial or his direct appeal would have been any different had trial counsel introduced such expert testimony or had appellate counsel presented the issue on direct appeal. Given the fact that the "super glue" method is widely accepted with law enforcement and courts throughout the country, it is once again difficult to determine how such an expert would have assisted in Cowans' defense or on appeal in the Ohio courts. This is particularly significant in light of the overwhelming evidence of Cowans' guilt in this case. As previously stated, in addition to Cowans' partial palm print discovered in Mrs. Swart's, kitchen, Mrs. Swart's personal property was discovered in Cowans' bedroom and on his property and dog tracking evidence was introduced whereby a bloodhound followed Cowans' scent from the victim's residence to Cowans' trailer. Under the circumstances presented, Cowans' appellate counsel simply cannot be considered constitutionally ineffective in this regard.

Cowans' sub-claim *(c)* is without merit in Federal habeas and should be dismissed.

> *(d)      Ineffective assistance of appellate counsel regarding competency to waive presentation of mitigation evidence.*

Cowans maintains that appellate counsel were constitutionally ineffective by failing to raise as an appellate issue trial counsels' failure to ensure that he was competent to waive the presentation of mitigation evidence. It is Cowans' continued position that there was no compelling evidence of his competency at the time he voluntarily and knowingly waived his right to present mitigating evidence. To the contrary, Cowans

maintains that the record contains evidence which gives rise to an inference of incompetence.

The Ohio Supreme Court evaluated this claim on direct appeal through the lens of trial court error.  While the Court's analysis does not touch upon the issue of ineffective assistance of appellate counsel, it remains instructive on the issue of Cowans' competence to ultimately choose to have no mitigation presented.  The Ohio Supreme Court evaluated the issue of Cowans' competence as follows:

> In his eighth proposition of law, Cowans contends that the trial court should have (1) held a hearing to determine his competence to waive mitigation, and (2) taken steps to ensure that his waiver was knowing and voluntary.
>
> 1.  Competence
>
> The principal contention of Cowans's eighth proposition is that, whenever a capital defendant declines to present evidence in mitigation, the trial court must determine on the record whether he has the mental capacity to appreciate his position and make a rational choice with respect to presenting mitigation vel non.
>
> However, a capital defendant's decision to forgo mitigation "does not by itself call his competence into question." Tyler, 50 Ohio St.3d at 29, 553 N.E.2d at 585. Accord State v. Berry (1995), 72 Ohio St.3d 354, 361, 650 N.E.2d 433, 440 (Berry I). Therefore, "absent a request by counsel, or any indicia of incompetence, a competency evaluation is not required." Ashworth, supra, 85 Ohio St.3d at 62, 706 N.E.2d at 1237, citing Tyler, 50 Ohio St.3d at 29, 553 N.E.2d at 585.
>
> Cowans argues that Tyler is inconsistent with our recent decision in State v. Berry (1997), 80 Ohio St.3d 371, 686 N.E.2d 1097 (Berry II). In Berry II, a condemned prisoner, having exhausted his direct appeals, wished to waive further challenge to his convictions and sentence. We ordered a hearing on the issue of Berry's competence and found him competent only after reviewing the hearing record.
>
> When a capital defendant decides to waive his right to present mitigation (Tyler), or to review of a conviction and sentence (Berry II), a court must inquire into his competence to do so if some reason, other than that decision, exists to question competence. Thus, in Rees v. Peyton (1966), 384 U.S. 312, 86 S. Ct. 1505, 16 L. Ed. 2d 583, the court denied a

condemned prisoner leave to withdraw his certiorari petition, since his attorney had submitted a psychiatric report calling the prisoner's competence into question.

Conversely, where no independent reason to question competence exists, no hearing is required. Thus, in Hammett v. Texas (1980), 448 U.S. 725, 100 S. Ct. 2905, 65 L. Ed. 2d 1086, the court permitted a condemned prisoner to withdraw his petition; the difference was that nobody questioned Hammett's competence. The decision to forgo challenging his death sentence was not sufficient of itself to require an evaluation.

Tyler is no more inconsistent with Berry II than Hammett is with Rees. In Berry II we had reason to question Berry's competence other than his desire to be executed, that being Berry's history of hallucinations and a diagnosis of a psychotic disorder before his aggravated murder trial. 80 Ohio St.3d at 377, 686 N.E.2d at 1102; see, also, Berry I, 72 Ohio St.3d at 367, 650 N.E.2d at 444 (Wright, J., dissenting). In Tyler, on the other hand, there was nothing in the record to raise any question as to the defendant's competence. 50 Ohio St.3d at 29 and 38-39, 553 N.E.2d at 585 and 593-594. [FN2]

Hence, we reject Cowans's claim that a trial court must always inquire into the competence of defendants who refuse to present mitigation. No such inquiry need take place unless some reason exists to doubt the defendant's competence.

It remains to ask whether, in this case, anything in the record actually raised a question as to Cowans's competence. [FN3] On this point, we take our guidance from the trial judge, who stated in his sentencing opinion that Cowans "evidenced no mental instability."

The record shows, and the trial judge noted in his opinion, that Cowans was uncooperative and disruptive at certain times during this case. At the beginning of the case, Cowans expressed a belief that he had no chance of a fair trial because his first set of assigned counsel thought he was guilty. He asked that counsel be replaced because they allegedly discussed plea-bargain options with him, and he expressed a fear that the originally appointed counsel would control anyone else from that counsel's office, so that appointing new counsel from the same office would be "just like hanging me * * * ."

After the court appointed new counsel, Cowans proceeded to challenge these counsel as well, claiming they were trying to pressure him into pleading guilty. When the court refused Cowans's second request for new counsel, Cowans refused to accept the court's decision and stood up as if to leave the courtroom. When the trial judge asked Cowans for his

assurance that he would not be disruptive, Cowans repeated his demand for new counsel rather than answering. The judge therefore had him removed. Brought back to court for a subsequent hearing, Cowans doggedly repeated his demands for new counsel, accused the judge of bias, and became angry because someone was, or appeared to be, laughing at him.

Subsequently, however, Cowans cooperated with his counsel (see discussion of Cowans's first proposition of law, supra) and created no further problems until the guilt-phase verdicts were read. When Cowans found that he had been convicted, he directed a profane outburst at the court and jury, and then expressed his wish to leave the courtroom. The court ordered Cowans taken to a room in the courthouse basement equipped with closed-circuit TV and audio, so he could see and hear the rest of the proceedings. After the jurors returned to the jury room, a deputy reported to the judge that Cowans had disabled the TV and was asking to be taken back to jail.

Next, Cowans refused to take part in the R.C. 2929.022 evidentiary hearing on the prior-conviction specification. His counsel explained that Cowans wished to boycott the remainder of the trial because he felt that "the jury that's already found him guilty of 20 counts * * * would be biased against him when it came to any mitigation," and that the court was also biased.

The trial court ordered that Cowans be returned to the basement room with the closed-circuit TV. In disrespectful and sometimes foul language, Cowans protested that he regarded the court as a "kangaroo court" and did not want to be in the courthouse at all.

Minutes later, Cowans's counsel informed the court that Cowans was refusing to watch the proceedings and was demanding that the audio be turned down. He was also physically resisting the three deputies guarding him.

Despite this behavior, the trial judge found, "While disruptive, the Defendant evidenced no mental instability but rather acted out his pique." (Emphasis added.)

In a wide variety of situations, we have affirmed that factual determinations are best left to those who see and hear what goes on in the courtroom. See, e.g., State v. Wilson (1972), 29 Ohio St.2d 203, 211, 58 Ohio Op. 2d 409, 414, 280 N.E.2d 915, 920 (deferring to trial judge's determination of challenge for cause); State v. Fanning (1982), 1 Ohio St.3d 19, 20, 1 Ohio B. Rep. 57, 58, 437 N.E.2d 583, 584 (weight of evidence and witness credibility are for trier of fact); State v. Morales (1987), 32 Ohio St.3d 252, 255, 513 N.E.2d 267, 271 (effect on jury of spectator's emotional

outburst is fact question for trial court); State v. Bradley (1989), 42 Ohio St.3d 136, 143, 538 N.E.2d 373, 381 (trial counsel were in better position than reviewing court to determine how jurors should be questioned).

Similarly, when a trial court must decide whether to hold a hearing on the defendant's competence to stand trial, reviewing courts "give weight * * * to the trial judge's opportunity to observe the defendant * * * ." Commonwealth v. Hall (1982), 15 Mass. App. Ct. 1, 3, 443 N.E.2d 121, 122.

Maggio v. Fulford (1983), 462 U.S. 111, 117, 103 S. Ct. 2261, 2264, 76 L. Ed. 2d 794, 799-800, illustrates the principle. There, it was held that "the trial judge's observation of [the defendant's] conduct" provided record support for the conclusion that "there was insufficient question as to [the defendant's] competence to warrant" further inquiry. Accord People v. Danielson (1992), 3 Cal. 4th 691, 727, 13 Cal. Rptr. 2d 1, 21, 838 P.2d 729, 749; People v. Morino (Colo.App.1987), 743 P.2d 49, 52; State v. Zorzy (1993), 136 N.H. 710, 715, 622 A.2d 1217, 1219-1220; State v. Edwards (S.D.1997), 1997 SD 130, 572 N.W.2d 113, 117-118.

We think the trial court's factual finding in this case ought to receive the same respect. "Face to face with living witnesses, the original trier of the facts holds a position of advantage from which appellate judges are excluded. * * * How can we say the judge is wrong? We never saw the witnesses." Boyd v. Boyd (1930), 252 N.Y. 422, 429, 169 N.E. 632, 634.

Likewise, we never saw Cowans, and thus can hardly say that the trial judge here was wrong when he said that Cowans "evidenced no mental instability." Limited to reviewing the black-and-white record, we are in no position to second-guess factual determinations made by a trial judge, which may be based on a person's demeanor, conduct, gestures, tone of voice, or facial expressions. (The judge here took specific notice of Cowans's demeanor, which "would range from smiling and relaxed * * * to angry and vocal when he was denied a request or his position was challenged.") Indeed, it is noteworthy that nobody on the spot thought Cowans's behavior raised any question as to his competence. Defense counsel, who appear to have done a diligent job of defending a difficult client, made no suggestion that Cowans might lack the competence to waive mitigation.

That competence, as we have recently held, is measured by the following test: "A [capital] defendant is mentally competent to forgo the presentation of mitigating evidence * * * if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of evidence. The defendant must fully comprehend the ramifications of his decision and must

possess the ability to reason logically, i.e., to choose means that relate logically to his ends." Ashworth, 85 Ohio St.3d at 69, 706 N.E.2d at 1241.

The defendant's behavior here did not inherently raise questions concerning his capacity to understand the difference between life and death, to fully comprehend the ramifications of his decision, or to reason logically. Moreover, the trial judge, based on his observations of this defendant, and having the defendant's displays of temper in mind, found that these displays resulted from pique, not mental instability. Thus, in order to find error, we would have to second-guess the express factual determination of the trial judge. This we decline to do. We therefore find that the trial court was not required to order a competency hearing sua sponte.

2. Knowing and Voluntary Waiver

Cowans also suggests, in this proposition of law, that the trial court failed to determine whether his waiver of the right to present mitigating evidence was knowing and voluntary.

In State v. Ashworth (1999), supra, at paragraph one of the syllabus, we held that a waiver of the presentation of mitigating evidence must be knowing and voluntary, and that to ensure this, the trial court must conduct an inquiry of the defendant on the record.

Pursuant to Ashworth, the record must affirmatively demonstrate that (1) the court has informed the defendant of the right to present mitigating evidence, (2) the court has explained what mitigating evidence is, (3) the defendant understands the importance of mitigating evidence, (4) the defendant understands the use of mitigating evidence to offset the aggravating circumstances, (5) the defendant understands the effect of failing to present mitigating evidence, and (6) the defendant wishes to waive mitigation. Ashworth at 62, 706 N.E.2d at 1237.

Our primary reason for requiring this procedure was to ensure that a defendant understood the importance of presenting mitigating evidence, discussed these issues with counsel, and confirmed in open court that he or she wished to waive presentation of mitigating evidence. Only then could the trial court, and this court, be assured that the defendant knowingly and voluntarily waived this substantial and important right to show the jury or three-judge panel why the death penalty should not be imposed in his or her particular case.

Although the trial court in this case did not have the benefit of our decision in Ashworth, the procedures used in this case to advise Cowans of the potential consequences of his decision were substantially similar to those adopted in Ashworth. The transcripts of the sentencing hearing reflect

that the court engaged in communications with the defendant over a two-day period. These communications included apprising him that he had a right to present testimony and make a statement, explaining to him that his attorneys had prepared to present witnesses, inquiring why Cowans did not want to present mitigating evidence, and informing him that if he presented no evidence the jury would probably impose the death penalty.

This colloquy complies with many of the requirements set forth in Ashworth. Further, defense counsel stated that they had discussed the issue with Cowans and that he had not arrived at his decision lightly.

Yet, the trial court failed to address all six Ashworth requirements in its colloquy with Cowans. Most notably, there was no explanation of what mitigating evidence is, and no finding on the record that Cowans fully understood the ramifications of failing to present mitigating evidence or desired to waive his rights.

While this procedure fell short of that established in Ashworth, we hold that our ruling in Ashworth is prospective only. We cannot hold the trial court accountable for not following a procedure that was not established, or even foreshadowed, when the case was tried.

We are not holding today that substantial compliance is enough to satisfy the requirements of Ashworth; however, the trial court here, like the trial court in Ashworth, did engage the defendant in a colloquy concerning the waiver of mitigation, even though no guidelines were in place when Cowans was tried. Given the content of the trial court's colloquy, there is nothing to indicate that Cowans did not knowingly and voluntarily relinquish his right to present mitigating evidence. Since the decision in Ashworth is prospective only, the failure to comply with all of the procedural requirements set forth in Ashworth is not error in this case.

To sum up: Cowans's desire to waive mitigation did not automatically require a competency hearing, nor did the record create a doubt as to his competence such as to require a competency hearing; the record indicates that Cowans's waiver was knowing and voluntary; and, although the specific procedural requirements of State v. Ashworth were not complied with in full, they are prospective only and hence do not apply here. Accordingly, Cowans's eighth proposition of law is overruled.

State v. Cowans, 87 Ohio St.3d at 81-86. Exhibit 14, pp. 68-71.

Clearly, the determination of the Ohio Supreme Court that Cowans was competent to waive the presentation of mitigating evidence and that Cowans' waiver was in fact

knowing and voluntary is not contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court. As the Ohio Supreme Court correctly concluded, the trial court record contained no indication that Cowans failed to possess the requisite mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue the presentation of mitigation evidence.

In <u>Sanchez v. Gilmore</u>, 189 F.3d 619, 623 (7th Cir. 1999), a federal habeas corpus petitioner claimed that he was incompetent when he waived jury determination of his eligibility for the death penalty. The petitioner further asserted that the trial court should have held an evidentiary hearing to determine if he was competent to proceed to the sentencing phase. <u>Id</u>. 189 F.3d 623 (7th Cir. 1999). The petitioner's trial attorney requested a continuance based upon the fact that the petitioner had attempted suicide after being found guilty. Additionally, petitioner did not want his mitigation witnesses to testify. In rejecting his claim, the Seventh Circuit referred to the findings of the trial judge who, after observing petitioner's conduct at trial, was convinced he was competent to continue. Furthermore, the court emphasized that "being 'distraught' about the possibility of being sentenced to die,…does not demonstrate" incompetence.

At the state level, Cowans failed to point to any actual indicia of incompetence in the trial court record. See <u>State v. Cowans</u>, 87 Ohio St.3d at 72, 717 N.E.2d at 312, footnote 3. Similar to the factual scenario in <u>Sanchez</u>, nothing reported or observed by the trial judge caused him to doubt that Cowans was competent to waive the presentation of mitigating evidence. Cowans' decision to not participate and to instruct his witnesses to be uncooperative, in and of itself, does not demonstrate incompetence or automatically

prompt a competency hearing.  The trial court, not a dissenting Ohio Supreme Court

justice, occupied the best position to evaluate Cowans competency.  (See ECF No. 15,

Amended Petition, 29-36).   In this instance, the trial court determined that Cowans'

pique, not any mental instability, caused his disruptive behavior, a finding with which the

Ohio Supreme Court ultimately agreed.  Cowans, 87 Ohio St.3d at 83, 727 N.E.2d at 312.

Cowans' actions did not alert even his trial attorney to any purported change in his

competency.  Cowans' further contention that a hearing was somehow required lacks

merit given his failure to show any compelling evidence creating doubt regarding his

competency.  The Ohio Supreme Court's ruling was consistent with federal law and a

reasonable determination of the facts in light of the evidence presented.

In Tyler v. Mitchell, 416 F.3d 500 (6th Cir. 2005), the Sixth Circuit recently

discussed the issue of a petitioner's right to waive the presentation of mitigating evidence

as it relates to the concept of ineffective assistance of counsel.  Specifically the Court

concluded:

> As a general matter, it is not necessarily unconstitutional for a capital
> defendant or his counsel to fail to produce mitigating evidence. *See*
> *Wiggins v. Smith, 539 U.S. 510, 533, 156 L.Ed.2d 471, 123 S.Ct. 2527*
> *(2003)*("[*Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104
> S.Ct. 2052 (1984)] does not require counsel to investigate every **[\*\*\*4]**
> conceivable line of mitigating evidence no matter how unlikely the effort
> would be to assist the defendant at sentencing. Nor does *Strickland*
> require **[\*\*10]** defense counsel to present mitigating evidence at
> sentencing in every case."); *Strickland*, 466 U.S. at 691 ("The
> reasonableness of counsel's actions may be determined or substantially
> influenced by the defendant's own statements or actions. Counsel's actions
> are usually based, quite properly, on informed strategic choices made by
> the defendant and on information supplied by the defendant."); *Wallace v.*
> *Ward*, 191 F.3d 1235, 1247 (10th Cir. 1999) ("Failure to present
> mitigating evidence is not per se ineffective assistance of counsel.");
> *Workman v. Bell*, 178 F.3d 759, 770-71 (6th Cir. 1998) (holding that
>  **[\*504]** capital defendant's counsel was not constitutionally ineffective for
> determining for tactical reasons not to present mitigation evidence to the

jury). Moreover, this court has squarely held that a capital defendant's counsel is not constitutionally ineffective when a competent defendant prevents the investigation and presentation of mitigation evidence. _Coleman v. Mitchell_, 244 F.3d 533, 544-46 (6th Cir. 2001). It follows that the Constitution does not prohibit a competent capital defendant from waiving the presentation **[\*\*11]** of mitigation evidence. *See* _Chandler v. United States_, 218 F.3d 1305, 1319 n.25 (11th Cir. 2000) ("While Petitioner is correct that capital defendants have a right to present just about any evidence in mitigation at the sentencing phase, this right is the right to be free of governmental interference with the presentation of evidence."); _Singleton v. Lockhart_, 962 F.2d 1315, 1322 (8th Cir. 1992).

Id at 504.

Under the circumstances presented herein, when one considers the fact that Cowans did not exhibit any indication that he was not competent to waive the presentation of mitigating evidence and it does not constitute ineffective assistance of counsel to acquiesce to a competent defendant's decision to waive mitigation, appellate counsel were not constitutionally ineffective by foregoing this issue on direct appeal and pursuing other, more viable appellate issues.

Cowans sub-claim *d* is without merit in Federal habeas and should be dismissed.

*Conclusion*

Based upon the foregoing, Cowans' ineffective assistance of appellate counsel claims lack merit in Federal habeas. Cowans is simply unable to satisfy either the deficient performance or the prejudice prong of Strickland as it relates to his appellate representation in the Ohio state courts.

## CONCLUSION

For the foregoing reasons, Respondent submits that Petitioner Cowans' fourteenth ground for relief (as well as all grounds for relief contained within Cowans' Amended Petitions for a Writ of Habeas Corpus previously addressed by Respondent in her Return of Writ (ECF No. 36) and Response to First Amended Petition for Habeas Corpus (ECF No. 46)) lacks merit and should be denied in its entirety without an evidentiary hearing.

Respectfully submitted,

**JIM PETRO**
**Attorney General**

 /s/ Daniel R. Ranke
DANIEL R. RANKE (0047136)
(Trial Counsel) Assistant Attorney General
Capital Crimes Section
615 W. Superior Ave., 11th Floor
Cleveland, Ohio 44113
(216) 787-3030
(216) 787-3480 (fax)
**CCSReview@ag.state.oh.us**

**COUNSEL FOR RESPONDENT**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16th, 2005, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

S/Daniel R. Ranke
Daniel R. Ranke (0047136)
Assistant Attorney General
Capital Crimes Section
615 W. Superior Ave. 11th Floor
Cleveland, Ohio 44113
(216) 787-3030
(216) 787-3480 (fax)
CCSReview@ag.state.oh.us