IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JESSE J. COWANS,                          :

    Petitioner,                          :          Case No.  1:00-cv-00618

-vs-                                      :          JUDGE SARGUS

MARGARET BAGLEY, Warden,                  :          Magistrate Judge Abel

    Respondent.                         :          *Death Penalty Case*

## PETITIONER'S RESPONSIVE MERIT BRIEF AS TO GROUND FOR RELIEF NO. 14

By Opinion and Order dated September 9, 2005, this Court granted Petitioner's second motion for leave to amend his petition to add a Fourteenth Ground for Relief raising a claim of ineffective assistance of appellate counsel. (Doc. #72). In her answer, Respondent raises the defenses of expiration of the statute of limitations and procedural default and also states her arguments as to the merits.[1] Petitioner's reply or "traverse" to Respondent's answer follows.

### I. STATUTE OF LIMITATIONS

Respondent has renewed her argument that Petitioner's Fourteenth Ground for Relief is barred by the AEDPA one-year limitations period.  In the September 9, 2005 Opinion and Order, this Court determined that Petitioner's initial unamended habeas petition was timely filed, that the claims raised in the Fourteenth Ground for Relief would

---

[1] There are four sub-claims under the Fourteenth Ground for Relief.  This Court's September 9, 2005 order identifies the sub-claims by numbers 1 through 4. In her arguments as to the merits, Respondent uses letters (a) through (d) to identify the sub-claims. In the interests of consistent cross-referencing, Petitioner will also use letters in his merits briefing.

"relate back" to the initial filing, and therefore that "those claims would be regarded as timely filed, too." (Doc. #72, pp. 11-12). Respondent has not offered any arguments or points of authority that were not already considered by the Court only four months ago. Therefore, her request for dismissal on statute of limitations grounds should be denied.

## II. PROCEDURAL DEFAULT

In Part II of her response, Respondent contends that Petitioner's Fourteenth Ground for Relief has been procedurally defaulted because it was not fairly presented to the Ohio courts. According to Respondent, Petitioner's application for reopening was presented to the Ohio Supreme Court in an untimely manner and was actually denied on the basis of untimeliness. Petitioner respectfully disagrees.

The legal principles governing the enforcement of the bar of procedural default in a habeas action have been succinctly summarized by the Sixth Circuit as follows:

> In determining whether a procedural default has occurred, and if so, what effect the default will have on federal review of a state conviction, the district court must consider whether (1) a state procedural rule exists that applies to the petitioner's claim, (2) the petitioner failed to comply with the rule, (3) the state court actually applied the state rule in rejecting the petitioner's claim, and (4) the state procedural rule is an adequate and independent ground upon which the state can rely to deny relief. *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir. 1998). The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied upon by the state courts involves a 'firmly established and regularly followed state practice.' *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Furthermore, a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a reasoned opinion in the case 'clearly and expressly states that its judgment rests on a state procedural bar. *Harris* [*v. Reed*],

489 U.S. [255], at 263, 109 S.Ct. [1038], 103 L.Ed.2d 308
(1989).

*Patterson v. Haskins*, 316 F.3d 596, 604 (6th Cir. 2003).

Rule XI, Section 6 of the Ohio Supreme Court Rules of Practice provides a
remedy to a capital defendant who desires to raise a claim of ineffective assistance of
counsel relating to deficient performance by his attorney in his direct appeal to that
court. The rule requires the defendant to identify the propositions of law or arguments
that were omitted from the direct appeal due to the alleged ineffective representation. *Id.*
at §6(B)(3). It also requires a demonstration of good cause for an untimely filing if the
application is filed more than 90 days after the entry of judgment in the direct appeal.
*Id.* at §6(B)(2).

Petitioner filed his application for reopening in the Ohio Supreme Court on
January 23, 2004. In his application, he set forth an explanation of good cause for filing
more than 90 days after the judgment in his appeal. He also identified four previously
omitted propositions of law (which are the subject of the four sub-claims of his
Fourteenth Ground for Relief in this Court) and the basis for his claim that appellate
counsel was ineffective for failing to raise and argue same in the direct appeal. (Doc.
#74-2, Ex. A, pp. 2-14).  On August 2, 2004, the state court filed a one-line entry citing
generally to Section 6 of Rule of Practice XI and directing  that "IT IS ORDERED BY
THE COURT that the application for reopening be, and hereby is denied." (Doc. #74-2,
Ex.C, p. 49).

Petitioner submits that under the state of this record, the bar of procedural default
is not applicable. As is discussed *infra*, the one-line entry of the Ohio Supreme Court is

not sufficient to demonstrate that it actually denied his reopening application for untimeliness. In addition, the Sixth Circuit has recently held that the Ohio Supreme Court's enforcement of the timeliness requirements in capital cases was not a firmly established and regularly followed practice during the time period when Petitioner sought relief in that court.

### A.    Respondent Has Failed to Satisfy Her Burden of Proving That the Ohio Supreme Court Actually Denied Petitioner's Reopening Application on Untimeliness Grounds

Respondent cites *Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004) for the proposition that when a state appellate court's ruling is silent as to its reasons for denying relief, the federal habeas court "assumes" that the state court "would have" enforced the applicable procedural bar. Respondent's reliance on the opinion in *Bonilla* is misplaced for the following reasons.

In *Bonilla*, the state court record showed that the Ohio Supreme Court denied the habeas petitioner's motion for leave to file a delayed appeal in an unexplained one-line entry.  In concluding that the supreme court actually enforced the  bar of untimeliness, the Sixth Circuit examined the language of the rule governing delayed appeals (Ohio Sup. Ct. R. Prac. II, §4(a)) and took note that it involves a two-step process. First, the defendant must make a sufficient showing of "adequate reasons" for the untimely filing of his notice of appeal from a judgment of the court of appeals. Second, if "adequate reasons" are demonstrated and the court "grants a motion for delayed appeal," the defendant may then (and only then) proceed to file a jurisdictional memorandum

containing the propositions of law and arguments in support of his claimed appeal as of right. *Id.*, 370 F.3d at 497.

In *Bonilla,* the Ohio Supreme Court had denied the petitioner's motion for a delayed appeal after he completed the initial step of the process. The court never granted him permission to file a jurisdictional memorandum addressing the merits of his claims. Based on this chronology, the *Bonilla* panel reasoned that the state court must have denied relief to the petitioner on the procedural ground that he had failed to establish "adequate reasons" for the delay. *Id.*

The *Bonilla* panel's reasoning process makes sense when the timeliness of the filing is the *only* justiciable issue pending before the state court at the time it renders its ruling.  However, the holding in *Bonilla* is readily distinguishable in cases such as Cowan's where the issues of timeliness as well as the merits are *simultaneously* before the state court at the time of its ruling denying relief. *See Abela v. Martin*, 380 F.3d 915 (6th Cir. 2004).

In the *Abela* case, the record revealed that the habeas petitioner had filed a motion for relief from judgment in the Michigan state courts raising several claims of constitutional error. His motion alleged that ineffective assistance of his appellate counsel constituted "good cause" for his failure to raise these claims in his direct appeal as of right. The Michigan trial court denied the post-judgment motion and the state court of appeals affirmed that ruling. *Id.*, 380 F.3d at 920.

Thereafter, the Michigan Supreme Court denied his delayed application for leave to appeal the adverse ruling of the court of appeals. The one-line entry stated that

"Defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." After the petitioner filed his habeas petition, the federal district court dismissed it on procedural default grounds. On appeal, the Sixth Circuit reversed. *Id.*, 380 F.3d at 920-921.

The *Abela* panel examined the Michigan rule governing motions for relief from a criminal judgment (M.C.R. 6.508(D)) and noted that in addition to procedural grounds, "[a] court may deny relief from judgment under 6.508(D) for the *non-procedural* reason that the defendant simply failed to meet his burden of 'establishing entitlement to the relief requested.'" (emphasis supplied). *Id.*, 380 F.3d at 922. The panel ultimately concluded that "[a]s such the Michigan Supreme Court's citation to M.C.R. 6.508(D) in its order denying Abela leave to appeal does not demonstrate that that court denied him leave to appeal on the basis of a procedural default[.]" *Id.*

In denying Petitioner's application for reopening his direct appeal, the Ohio Supreme Court cited generally to "Section 6" of Rule of Practice XI, but failed to identify the particular subsection upon which the denial was based. Respondent urges this Court to "assume" that the state supreme court denied the application based on the ground of untimeliness contained in subsection (A) of Rule XI. However, she does not point to anything in the Ohio Supreme Court's entry that would negate the inference that the application was denied under subsection (E) for the non-procedural reason that, in the state court's view, there was a lack of "a genuine issue as to whether applicant was deprived of the effective assistance of counsel on appeal."

6

In any event, a recent opinion of the Sixth Circuit requires that any doubts about the nature of the state court ruling be resolved in Petitioner's favor. In *Franklin v. Anderson*, Nos. 03-3636/03/3697, ___F.3d ____ , 2006 U.S. App. LEXIS 444*15 (Jan. 9, 2006) (published opinion), the panel majority conducted a comprehensive review of the Ohio Supreme Court's reported rulings in appeals from denials of reopening applications in capital cases under Ohio Rule of Appellate Procedure 26(B) cases and found that the state's high court has been "erratic" in enforcing the 90 day filing requirement.

The *Franklin* panel observed that "[f]or several years following the enactment of amended Rule 26(B), the Ohio Supreme Court regularly followed the rule's timeliness requirements. However, in 2000 it began ignoring the lower courts' dismissals of Rule 26(B) applications as untimely and affirming the dismissal of the applications on the merits. Recently, in yet another reversal of practice, the Ohio Supreme Court has renewed affirming the dismissal of Rule 26(B) applications in capital cases as untimely." *Id.,* 2006 U.S. App. LEXIS 444 at *16-19 (internal citations omitted)

Section 6 of Ohio Sup. Ct. R. Prac. XI is patterned after Ohio R. App. P. 26(B) and contains a similarly worded "good cause" exception to the 90 day filing deadline. Therefore, it is reasonable to conclude that the Ohio Supreme Court followed the same "erratic" practice described in *Franklin* when ruling on reopening applications filed in the first instance in that court under Rule XI.

Petitioner's reopening application was filed on January 23, 2004. According to *Franklin*, the Ohio Supreme Court was routinely "ignoring" the timeliness requirements

7

of Rule 26(B)  and reaching the merits of the claims raised in reopening applications filed in or after the year 2000. The panel cited the August 11, 2004 opinion in *State v. Lamar*, 102 Ohio St.3d 467, 2004-Ohio-3976, 812 N.E.2d 970 as marking the turning point when the Ohio Supreme Court returned to its pre-2000 policy of  enforcing the timeliness requirement and refusing to reach the merits of reopening applications. *Id.*

As long as the Ohio Supreme Court continues to employ a "cut and paste" approach to the drafting its rulings, this Court does not need to go any further in attempting to divine its reasons for denying reopening applications. While the use of what has been euphemistically described as a "post card denial"[2] may serve the state judiciary's desire for expediency and economy at the possible expense of a reasoned deliberative process, the Sixth Circuit is unwilling to lend its imprimatur to the practice, observing that  "[i]f a state court is slurring its words, [a federal habeas court's] job is not to guess what it might be saying, but rather to demand that it enunciate more clearly." *Abela*, 380 F.3d at 922. Therefore, absent a clear enunciation of something to the contrary, the denial of Petitioner's application to reopen his Ohio Supreme Court appeal must be interpreted as resting on non-procedural grounds.

      **B.**    **Respondent Has Failed to Satisfy Her Burden of Proving That the Timeliness Requirements for Reopening an Appeal in the Ohio Supreme Court Were Firmly Established and Regularly Followed During the Time Period When Petitioner's Reopening Application Was Pending**

---

[2] *Calderon v. Morales*, 85 F.3d 1387, 1392 (9th Cir.), *cert. denied*, 519 U.S. 1001, 117 S.Ct. 500, 136 L.Ed.2d 391 (1996).

It is the Warden's burden to demonstrate that the state procedural rule was already firmly established and regularly followed as of the time when the state court invoked the rule. *Mitchell v. Mason*, 325 F.3d 732, 739 (6th Cir. 2003), *cert. denied*, 543 U.S. 1080, 125 S.Ct. 861, 160 L.Ed.2d 824 (2005). *See also Richey v. Mitchell,* 395 F.3d 660, 680 (6th Cir.) ("We measure whether Rule 26(B) was 'firmly established and regularly followed by the time as of which it [was] to be applied.'"), *vacated on other grounds*, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005).  In *Franklin*, the Sixth Circuit ultimately concluded that "[i]n light of the fluctuating treatment of Rule 26(B) applications by the Ohio Supreme Court, we cannot hold that the state courts have regularly followed and enforced the Rule's timeliness requirement." *Id.,* 2006 U.S. App. LEXIS 444 at *19.  This conclusion should apply with equal force to denials of reopening applications under Ohio Sup. Ct. R. Prac. XI, Section 6.

Therefore, even if Respondent could somehow make a tenable case that Petitioner's reopening application was actually denied on untimeliness grounds, she cannot satisfy her burden of proving that the ruling was reached as a result of a "firmly established and regularly followed" procedure. The ruling cannot supply a legal justification for dismissing the Petitioner's Sixth Amendment claim on procedural default grounds. *Franklin, supra*.

### III. MERITS

Respondent contends that the "unreasonable application" standard of 28 U.S.C. §2254(d)(1) controls this Court's review of the merits of Petitioner's ineffective assistance of appellate counsel claims. Petitioner disagrees.

When the state court ruling consists of an unexplained order denying relief, a federal habeas court will conduct its review using the *de novo* standard rather than the more deferential AEDPA standard. *McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir.), *cert. denied*, 543 U.S. 892, 125 S.Ct. 168, 160 L.Ed.2d 156 (2004) (applying *de novo* standard to review of ineffective assistance claim where state court of appeals and supreme court "both denied leave to appeal in orders of one sentence"). The Ohio Supreme Court's unreasoned August 24, 2004 entry denying Petitioner's application for reopening is the only state court ruling on his appellate ineffectiveness claims. Therefore, Petitioner's Fourteenth Ground for Relief should be reviewed *de novo*. *McAdoo, supra.*

Turning to the merits, the two prong test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is controlling on the issue of whether Petitioner was deprived of his Sixth Amendment right to the effective assistance of appellate counsel. According to *Strickland*, the habeas petitioner must establish that (1) his attorney committed an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and (2) counsel's deficient performance so prejudiced the defense that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *Id*. at 694, 104 S.Ct. at 2068-2069.

In cases involving claims of ineffective assistance of counsel in the direct appeal, the prejudice prong of the *Strickland* test is satisfied if "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v.*

10

*Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) [citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002)]. For the following reasons, Petitioner submits that the performance of his counsel in his direct appeal to the Ohio Supreme Court fell below Sixth Amendment standards as a result of their failure to raise the claims of error identified in his Fourteenth Ground for Relief and that but for their serious errors in this regard, there is a reasonable probability that the final outcome of the direct appeal would have been favorable to him.

**A.    There Is a Reasonable Probability That If Petitioner's Appellate Counsel Had Raised the Three Omitted Instances of Ineffective Assistance of Trial Counsel, the Outcome of Petitioner's Direct Appeal to the Ohio Supreme Court Would Have Been Reversal of His Convictions and an Order for a New Trial, or Vacation of the Death Penalty and an Order for a New Sentencing Hearing**

In his Fourteenth Ground for Relief, Petitioner identifies three instances of ineffective assistance of *trial* counsel that his attorneys failed to raise in his direct appeal to the Ohio Supreme Court. When a claim of ineffective assistance of appellate counsel is premised upon counsel's failure to raise a particular aspect of trial counsel's deficient representation, the reviewing court must also apply the same two-prong test of *Strickland* to trial counsel's performance for the purpose of determining whether Petitioner would have prevailed on the omitted ineffectiveness claim in his appeal.

Petitioner's habeas counsel has already set forth detailed arguments and points of authority in his traverse addressing the application of the *Strickland* criteria to each of the three omitted instances of ineffective assistance of trial counsel. These arguments may be found in the discussion under his Second Ground for Relief, which raises trial

counsel's ineffectiveness as an independent set of claims. In the interests of avoiding unnecessary repetition and with the Court's permission, Petitioner respectfully incorporates these arguments by appropriate page references to the traverse (Doc. #42) and confines his arguments herein to responding to the supplemental arguments raised by Respondent.

> **1.  Trial counsel's failure to dispel Petitioner's serious misconceptions regarding the penalty phase procedures vitiated any possibility of a knowing, voluntary and intelligent waiver of the right to present mitigating evidence and therefore constituted ineffective assistance of counsel**

In Part (c) of his Second Ground for Relief, Petitioner raised the claim that he was denied his right to effective assistance of counsel because his trial attorneys failed to ensure that his waiver of the right to present mitigation evidence in the penalty phase of the proceedings was knowing, voluntary and intelligent. His arguments in support thereof may be found at pages 35 to 39 of his traverse, which are incorporated herein by reference.

In her response to Part (a) of the Fourteenth Ground for Relief, Respondent quotes extensively from the transcript of the exchange between the state trial judge and Petitioner prior the commencement of the penalty phase of the proceedings. She then proposes that these "transcript references clearly demonstrate [that] the trial court engaged Cowans in a colloquy about waiver of mitigation. The court explained to Cowans his rights during mitigation and informed him that his attorney had prepared witnesses. Furthermore, the court inquired why Cowans did not want to be present and

warned him that waiving mitigation would *probably* result in the imposition of the death penalty." (Doc. 76, pp. 11-15, emphasis supplied).

The critical flaw in Respondent's argument is the fact that the Ohio Supreme Court made a specific finding that the trial judge did *not* explain the meaning of mitigating evidence and made "no finding on the record that Cowans *fully* understood the ramifications of failing to present mitigating evidence or desired to waive his rights." *State v. Cowans*, 87 Ohio St.3d 68, 86, 717 N.E.2d 298 (1999). Therefore, the colloquy definitely does *not* affirmatively demonstrate that trial counsel effectively discharged their Sixth Amendment obligations to their client.

On the other hand, the quoted portions of the transcript most definitely and affirmatively establish Petitioner's *lack of understanding* of the process. Contrary to the position taken by Respondent, it is not sufficient that the capital defendant *merely* possess an understanding that mitigating evidence is available to him. He must also understand the deliberative process by which the jury will reach a sentencing recommendation and the role that the mitigating evidence would have in the process.

The quoted portions of the waiver colloquy from the trial transcript actually demonstrates that Petitioner lacked even a rudimentary understanding of the process and that his attorneys (as well as the trial judge) did nothing to dispel his serious misconceptions. When he was asked why did "not wish to proceed in a mitigation hearing," Petitioner responded "I feel that it would be biased. I feel that I can't get a fair shake out of a jury that found me guilty on something I didn't do." (Doc. #76, p. 12).

It is impossible to reconcile this response with a knowing and intelligent waiver. Juries in capital case can (and when warranted do) return recommendations of a life sentence even though the issue of guilt necessarily was resolved adversely to the defendant. If a guilty verdict on the capital specifications alone mandated a death sentence, then there would be no purpose to be served by having a penalty phase hearing.

While these concepts may be readily apparent to those with legal training, this is not so to the average layperson, especially to an accused with little education and insight. In this case, Petitioner would not have demonstrated such a marked lack of understanding of the jury's role in the sentencing phase if his attorneys had made a conscientious effort to explain the process to him.

The trial judge compounded the problem by characterizing the chances of a death verdict as merely "probable" in the event that Petitioner chose to forego the presentation of mitigation evidence. In the absence of "jury nullification" (something not permitted by Ohio law), the return of a death recommendation by the jury is a *certainty* and not merely a "probability" in the absence of mitigation evidence.

In addition, the trial record is replete with instances of Petitioner's bizarre and irrational behavior that is indicative of trial counsel's failure to discharge their duties to their client before he ostensibly waived the presentation of mitigation evidence. Ohio Supreme Court Chief Justice Moyer catalogued these instances in his dissenting opinion in *Cowans*, 87 Ohio St.3d at 90-95, 717 N.E.2d at 317-321. He also made the very accurate observation that "nothing in the record indicates that counsel fully

14

explained the specific mitigating evidence available to Cowans" and that the trial court never inquired "whether counsel had explained the specific mitigating evidence available *and whether Cowans understood how that evidence might offset aggravating circumstances of the crime.*" *Id*. 87 Ohio St.3d at 96, 717 N.E.2d at 322 (emphasis supplied).

Petitioner was prejudiced by trial counsel's constitutionally deficient counsel and advice. As thoroughly explored in the argument under his Second Ground for Relief in his previously filed traverse, there was considerable mitigating evidence available to the defense. (Doc. #42, pp. 43-46). The Supreme Court as well as the Sixth Circuit have found in other cases that trial counsel's failure to investigate and present to the jury mitigating evidence of similar character and weight is sufficiently egregious as to satisfy the "reasonable probability" standard of the prejudice prong of the *Strickland* test.[3]

Thus, it stands to reason that the same conclusion should be reached in a case such as Petitioner's where the jury is deprived of the benefit of hearing the mitigating evidence due to the fact that the defense attorneys failed to counsel their client properly before he makes his decision to waive the presentation of such evidence. In other words, if the failure to investigate the existence and availability of mitigating evidence is itself prejudicial to the client, so then is the failure of counsel to properly counsel their client before he waives the right to present the evidence which they did investigate.

---

[3] *See e.g. Rompilla v. Beard*, 125 S.Ct. 2456. 162 L.Ed.2d 360 (2005); *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2002), *cert. denied*, 543 U.S. 925,125 S.Ct. 344, 160 S.Ct. 323 (2004); *Frazier v. Huffman*; 343 F.3d 780 (6th Cir. 2003), *supplemented*, 348 F.3d 174 (6th Cir. 2003), *cert. denied*, 541 U.S. 1095, 124 S.Ct. 2815, 159 L.Ed.2d 261 (2004); *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997), *cert. denied*, 523 U.S. 1079 & 1088, 118 S.Ct. 1526 & 1547, 140 L.Ed.2d 677 & 695 (1998).

Under the state of this record, it was incumbent upon appellate counsel to raise the issue of trial counsel's ineffectiveness in their representation of Petitioner in connection with the waiver of mitigation proceedings. Their failure to do so fell well below Sixth Amendment standards of competent appellate representation.

Petitioner was prejudiced by counsel's error. If trial counsel's ineffectiveness had been raised in the direct appeal, the Ohio Supreme Court would have been faced with a true conundrum. S*omeone* must bear the responsibility of providing a capital defendant with a full and understandable explanation of the penalty phase of the proceedings, including the law that the jury must follow in returning the recommendation of a death versus a life sentence and the critical role that mitigating circumstances and supporting evidence has in the process.

The Ohio Supreme Court declined to hold *the trial judge* strictly responsible for providing the Petitioner with such an explanation. It is therefore reasonably probable that if the Ohio Supreme Court had been presented with the argument that defense counsel should have provided their client with the explanation and advice that the trial court had omitted during the waiver colloquy, it would have deemed itself compelled to vacate Petitioner's death sentence.

> **2.  Trial counsel's failure to timely challenge palm print testimony that was used by the prosecution to place Petitioner at the scene of the homicide and failure to investigate and arrange for scientific testing of blood evidence that inferentially placed someone other than Petitioner at the scene constituted ineffective assistance of counsel**

In Parts (f) and (g) of his Second Ground for Relief, Petitioner raised the claim that he was denied his right to effective assistance of counsel because his trial attorneys failed to timely challenge testimony regarding a palm print lifted from a blender cover recovered from the homicide scene; and failed to investigate and arrange for scientific testing of blood evidence on the victims clothing and on the floor. His arguments in support thereof may be found at pages 51 to 56 of his traverse, which are incorporated herein by reference.

As to the blood evidence, Respondent limits her supplemental argument solely to the blood specimen from the floor which was identified in post-petition DNA testing to be that of the victim. She does not mention other findings in the DNA report that the housecoat worn by the victim at the time of the homicide contained "an unbalanced mixture of female and male DNA," that "[i]t is unlikely that [the victim] is a significant contributor to the DNA from this stain," and that "[Petitioner] is eliminated as a co-contributor to the DNA from this stain." (Doc. #37, p. 8).

The trial record, read as a whole, indicates that this widow lived alone. There is nothing in the existing record to dispel the inference that the deposit of the blood of at least one and perhaps two strangers (*i.e.* a man and a woman other than the victim or Petitioner) on the clothing worn by the victim at the time of her death was related to, and left by the perpetrator(s), of the homicide.

Respondent argues that the prosecution's case against Petitioner did not rely upon the existence of blood evidence. Of course it didn't, but this line of reasoning ignores the fact that it is defense counsel's job (and not that of the prosecutor) to

17

scrutinize the evidence and develop an evidentiary basis for contradicting the government's theory that their client was the perpetrator of the killing.

It cannot be overemphasized that Petitioner had no burden of proving that he was not the killer. He was entitled to an acquittal if the jury harbored a reasonable doubt as to the identity of the perpetrator. The presence of the blood on the victim's clothing that is scientifically linked to someone other than Petitioner certainly is far more compelling evidence of Petitioner's innocence than the palm print (which was found on an object located some distance away from the victim) is of his guilt. Under these circumstances, trial counsel's failure to arrange for scientific testing of the blood evidence fell below Sixth Amendment standards.

As to the palm print testimony, Respondent contends that the Petitioner was not prejudiced by his attorney's tardy objection to the testimony regarding the lifting of the print using the super glue method because the trial court's *post hac* ruling in favor of admissibility was "clearly correct." The trial transcript reveals that the State's fingerprint technician responded in the affirmative when the prosecutor asked him whether the use of the super-glue "is one of the most reliable methods of obtaining latent lifts?" He conceded, however, he lacked any specific knowledge of the scientific principles behind the method other than "[t]his is the way I've been shown, and that's the way it works." (Doc. #36, Ex. 45, p. 1748).

Aside from the tardiness of his objection, trial counsel's performance was constitutionally deficient because he failed to bring Ohio Rule of Evidence 702 to the trial court's attention. Under paragraphs (B) and (C) of the rule, the proponent of

18

scientific testimony must establish that the witness has "specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony" and that the testimony "is based on *reliable* scientific, technical, or other specialized information." (Emphasis supplied).

While the fingerprint technician possessed training in the *mechanics* of the super glue method, he lacked the specialized knowledge and education necessary to establish a foundation for its reliability. If counsel had made a timely objection supported by a citation to the pertinent rule of evidence, there is a reasonable probability that the trial judge would have sustained it.

An appellate court may consider the cumulative effect of trial counsel's errors when applying the second-prong of the *Strickland* test. If counsel on appeal had raised *both* of these instances of trial counsel's ineffectiveness and persuaded the Ohio Supreme Court that trial counsel's errors fell below the Sixth Amendment standard, Petitioner would have been in a position to make a very compelling argument that but for trial counsel's errors regarding the blood and palm print evidence, there would have been a reasonable probability of an acquittal. Under the circumstances, appellate counsel's performance fell below Sixth Amendment standards and there is a reasonable probability that the outcome of the appeal would have been an order for a new trial if the two cited instances of trial counsel's ineffectiveness had been raised.

**B. There Is a Reasonable Probability That If Petitioner's Appellate Counsel Had Raised an Eighth Amendment Challenge to the Manner in Which His Waiver of Mitigation Was Procured, the Outcome of Petitioner's Direct Appeal to the Ohio Supreme**

**Court Would Have Been an Order Vacating His Death Sentence
and an Order for a New Sentencing Hearing**

Part (d) of Petitioner's Fourteenth Ground for Relief raises the claim that his counsel on direct appeal was ineffective for failing to raise the Eight Amendment claim that is the subject of his Sixth Ground for Relief. In her response, Respondent frames Petitioner's sub-claim as follows: "Cowans maintains that appellate counsel were constitutionally ineffective by failing to raise as an appellate issue trial counsels' failure to ensure that he was competent to waive the presentation of mitigation evidence." (Doc. #76, p. 18). This is inaccurate.

Part (d) is not directed to appellate counsel's failure to raise an instance of ineffective assistance by trial counsel. In a prior opinion and order, this Court accurately summarized the gist of Petitioner's Sixth Ground for Relief as follows:

> The crux of petitioner's sixth claim fo relief is that the jury was prevented from hearing and considering relevant mitigating evidence, even though  there was no record evidence demonstrating a voluntary waiver of mitigation or that petitioner was even competent to execute a valid waiver, thereby creating a risk of arbitrary and capricious infliction of the death penalty. In other words, petitioner challenges the Eight Amendment proscription against arbitrary and capricious infliction of the death penalty ***in the context*** of a record that purportedly does not demonstrate a voluntary waiver of mitigation or competency on petitioner's part to execute such a waiver.

(Doc. #49, p 37, emphasis in original). Petitioner's arguments in support of the predicate Eighth Amendment claim may be found at pages 82 to 88 of his traverse, which are incorporated herein by reference.

20

It has long been settled that "[i]n capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the *character and record of the individual offender* and the circumstances of the offense as a constitutionally indispensable part of the process of inflicting the death penalty." *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) (emphasis supplied). Under the circumstances of the record in this case, it was incumbent on appellate counsel to mount an effective Eighth Amendment challenge to the perfunctory and arbitrary manner in which the trial court had accepted Petitioner's waiver and thereby paved the way for the virtually certain return of a death sentence.

Their failure in this regard fell below Sixth Amendment standards. In view of the strong pronouncements of the Supreme Court regarding the indispensability of the presentation of mitigation under the Eighth Amendment and a compelling trial record demonstrating Petitioner's lack of understanding of the significance of mitigation and lack of competency to waive mitigation, there is a reasonable probability that Petitioner's challenge to his sentence in his direct appeal would have been decided in his favor.

For the foregoing reasons, Petitioner prays that the Court will reject Respondent's procedural objections to his Fourteenth Ground for Relief and will grant him a writ of habeas corpus on the merits.

Respectfully submitted,
s/ Dennis C. Belli
DENNIS C. BELLI (0025216)
844 South Front Street
Columbus, Ohio 43206-2543
(614) 444-6556
bellilawoffice@yahoo.com

and

s/ Harry R. Reinhart
HARRY R. REINHART (0008294)

Reinhart Law Office

One Americana

400 South Fifth Street, Suite 202

Columbus, Ohio 43215-5430

(614) 228-7771

COUNSEL FOR PETITIONER

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Dennis C. Belli
DENNIS C. BELLI (0025216)
COUNSEL FOR PETITIONER